LAW LIBRARY

**FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I

---oOo---

THE QUEEN EMMA FOUNDATION,
a Hawai‘i non-profit corporation,
Plaintiff-Appellee,
vs.
ANDRE STEPHEN TATIBOUET, and CORAL REEF DEVELOPMENT, LLC,
a Hawai‘i limited company,
Defendants-Appellants,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE ENTITIES 1-10;
and DOE GOVERNMENTAL ENTITIES 1-10,
Defendants

NO. 26764

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 03-1-1054)

July 29, 2010

NAKAMURA, CHIEF JUDGE, FOLEY, and FUJISE, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

In this appeal, we are called upon to determine whether (1) an otherwise moot controversy may be kept alive by a dispute over the award of attorneys' fees and costs; and (2) whether the underlying merits of a moot appeal must be addressed to determine whether the trial court's award of attorneys' fees and costs to the "prevailing party" was proper. We hold that (1) a dispute over the award of attorneys' fees and costs does not prolong the life of an otherwise moot controversy; and (2) while an appellate court does have jurisdiction to consider whether the award of attorneys' fees and costs was proper, the merits of the underlying moot controversy will not be considered in determining whether the recipient of the attorneys' fees and costs award was the "prevailing party."

This appeal stems from a complaint for declaratory judgment filed in the Circuit Court of the First Circuit (circuit court)[1] by Plaintiff-Appellee The Queen Emma Foundation (The Foundation) against Defendants-Appellants Andre Stephen Tatibouet (Tatibouet) and Coral Reef Development, LLC (Coral Reef Development) (collectively referred to as "Defendants"). Through its complaint, The Foundation sought a judgment "declaring that Defendants are not entitled to convert the Coral Reef Hotel into a condominium . . . ." The Foundation's complaint and request for relief turned on the interpretation of a lease, referred to herein as "the Lot 30-A Amended Lease," which covered property owned by The Foundation on which the Coral Reef Hotel was situated. The Foundation was the "LESSOR" under the Lot 30-A Amended Lease and Tatibouet held the position of a "LESSEE." The circuit court granted The Foundation's complaint for declaratory judgment and also awarded attorneys' fees and costs in favor of The Foundation as the prevailing party in the total amount of $534,708.73.

The Defendants appealed these decisions. Tatibouet subsequently paid the attorneys' fees and costs award plus accrued interest. Defendants filed an opening brief, arguing that the circuit court erred in granting declaratory relief to The Foundation. They also argued that the circuit court erred in awarding The Foundation attorney's fees and costs because The Foundation "should not be the prevailing party."

Shortly after Defendants filed their opening brief, Tatibouet filed for bankruptcy. Tatibouet's bankruptcy filing automatically stayed this appeal. The proceedings in this appeal were suspended for three years while Tatibouet's bankruptcy proceeding was being resolved. During the bankruptcy proceeding, Tatibouet assigned and conveyed his interest in the Lot 30-A Amended Lease to a third party. In addition, Coral Reef Development was administratively terminated by the Department of

---

[1] The Honorable Victoria S. Marks presided.

Commerce and Consumer Affairs (DCCA) for failure to file annual reports and pay required fees.

On March 5, 2008, this court ordered Tatibouet to file a report on the status of his bankruptcy proceeding. On April 8, 2008, Tatibouet responded that he received a discharge under the bankruptcy code in October 2007 and that a Final Decree had been entered. Tatibouet stated that as the result of the termination of his bankruptcy case, the automatic stay of this appeal was no longer in effect, and he requested that proceedings in this appeal be resumed.

The Foundation subsequently filed a motion to dismiss on the ground that this appeal is moot. The Foundation asserts that Tatibouet and Coral Reef Development no longer have an interest in the Lot 30-A Amended Lease or the Coral Reef Hotel, and they thus have no "'right' or ability to complete their leasehold condominiumization scheme," which forms the basis of the underlying dispute. The Foundation argues that for this court to render a decision on the circuit court's interpretation of the Lot 30-A Amended Lease "would be the equivalent of an advisory opinion on an abstract point of law."

In opposition, Defendants claim that this appeal is not moot because (1) Tatibouet still has a direct financial stake in the appeal since he seeks to vacate the award of attorneys' fees and costs against him; and (2) Tatibouet may file a future action against The Foundation for breach of the Lot 30-A Amended Lease. Defendants also contend that we must address the underlying merits of this appeal, specifically, the proper interpretation of the Lot 30-A Amended Lease, because they are attacking the award of attorneys' fees and costs on the ground that Tatibouet, and not The Foundation, should have been the prevailing party.

For the reasons discussed below, we conclude that: (1) the Defendants' claims challenging the merits of the circuit court's grant of declaratory relief are moot; (2) Tatibouet's interest in overturning the attorneys' fees and costs award and the possibility that he may seek to file a lawsuit for breach of

the Lot 30-A Amended Lease do not save his claims challenging the merits of the circuit court's grant of declaratory relief from being moot; and (3) without our reaching the merits of the circuit court's grant of declaratory relief, the circuit court's award of attorneys' fees should be affirmed.

## I.   BACKGROUND FACTS
### A.

The subject hotel, formerly known as the Coral Reef Hotel (Hotel), is located on a lot described as Lot 30-A in Waikiki.   Lot 30-A was once part of a larger parcel described as Lot 30.   In 1965, Lot 30 was owned by The Foundation's predecessor in title[2] and was leased to Waikiki Development Company (WDC). WDC, in turn, subleased Lot 30 to a third party, and the sublease was thereafter assigned to additional parties in separate transactions.   In 1969, the Hotel was built, and in 1972, Tatibouet and others purchased the Hotel and a portion of the underlying leasehold of Lot 30 containing the Hotel.   Lot 30 was later subdivided into two lots, with Lot 30-A being the lot containing the Hotel.

In September and December 1975 and February 1976, an amended lease for Lot 30-A, the Lot 30-A Amended Lease, was executed with the term of the lease running until 2050.   The Foundation was the "LESSOR" and Tatibouet was one of the "SUBLESSEES" when the Lot 30-A Amended Lease was signed.   Later in 1976, Tatibouet and others acquired the position of the "LESSEE" under the Lot 30-A Amended Lease.

Article IX of the Lot 30-A Amended Lease provides in pertinent part:

ARTICLE IX

CONDOMINIUM DEVELOPMENT

IT IS MUTUALLY COVENANTED AND AGREED by and between the parties hereto that LESSEE may with the written approval of

---

[2] In 1965, The Foundation's predecessor in title was The Queen's Hospital, which was later renamed The Queen's Medical Center.   For purposes of simplicity, we will use "The Foundation" when referring to any of its predecessors in title for Lot 30 or Lot 30-A.

LESSOR develop the demised premises into a residential or commercial condominium upon the following terms and conditions:

. . . .

2. Horizontal Property Regime. If LESSEE shall decide to develop or convert the premises on Lot 30A into a condominium development, then at LESSEE's request and expense, LESSOR will join with LESSEE in executing a suitable declaration submitting said premises to a Horizontal Property Regime by Chapter 514, Hawaii Revised Statutes, as now or hereafter amended, thereby creating condominium leasehold or subleasehold estates in each of the units and all common elements of the project constructed thereon. Such declaration and all condominium documents shall be subject to the written approval of the attorneys for LESSOR. The schedule of rents shall be subject to approval of LESSOR. Such condominium documents will provide for an association of unit owners who shall at all times maintain a responsible corporate managing agent approved by LESSOR for the management and operation of said project and for the collection and payment when due on behalf of the holders of the unit subleased, all rents, taxes and other charges thereunder.

. . . .

Any proposed condominium subdivision shall be for a period no longer than this lease and shall not be an encumbrance upon the fee simple title.

(Emphases added.)

In 2003, Tatibouet moved forward with plans to convert the Hotel into a condominium, and Coral Reef Development was formed. Coral Reef Development was the proposed developer for converting the Hotel into a condominium, and Tatibouet planned to assign all of his interest in the Hotel to Coral Reef Development. In March of 2003, without seeking or obtaining The Foundation's approval for the condominium conversion, Defendants submitted a Preliminary Public Report and a Declaration of Condominium Property Regime[3] of Coral Reef Condominium Project to the Hawaii Real Estate Commission. On May 6, 2003, The Foundation learned of Tatibouet's plans to convert the Hotel into a condominium through a newspaper article. On May 10, 2003, condominium units were offered for sale to the public.

_____

[3] Condominiums were previously referred to in the Hawaii Revised Statutes as "horizontal property regimes," but the Hawai‘i Legislature changed the terminology to "condominium property regime" in 1988. 1988 Haw. Sess. Laws Act 65 § 2.

On May 19, 2003, The Foundation filed its complaint for declaratory judgment in the circuit court seeking a declaration that Defendants were not entitled to convert the Hotel into a condominium. The dispute between the parties largely turned on the interpretation of Article IX of the Lot 30-A Amended Lease.

The circuit court interpreted Article IX to mean "that [T]he Foundation would take steps to facilitate establishing a condominium provided that the condominium would not extend beyond the term of the lease and provided that the condominium would not encumber [T]he Foundation's fee simple title." The circuit court concluded that "[u]nder current law, a condominium cannot be created on Lot 30-A without encumbering [T]he Foundation's fee simple title."[4/] Accordingly, the circuit court granted The Foundation's complaint for declaratory judgment and ordered that

> Defendant's [sic] are not entitled to convert the Coral Reef Hotel into a condominium and that all offerings, marketing, filings and submission to the Real Estate Commission and the general public concerning such purported conversion are not binding upon [T]he Foundation and are of no effect.

The Foundation subsequently filed a motion for recovery of its attorneys' fees and costs on the grounds that: (1) The Foundation was the prevailing party; and (2) under the terms of the Lot 30-A Amended Lease and Hawaii Revised Statutes (HRS) § 607-14 (Supp. 2009), The Foundation was entitled to recover the attorneys' fees and costs it incurred. The circuit court granted The Foundation's motion but reduced the amount of attorney's fees it had requested. As part of its Final Judgment, the circuit court entered judgment in favor of The Foundation and jointly and severally against Defendants for attorneys' fees of $489,304.51 and costs of $45,404.22, for a total of $534,708.73. Tatibouet

---

[4/] With respect to Coral Reef Development, the circuit court further concluded that: (1) Tatibouet was required to obtain The Foundation's approval and/or consent to assign his interest in Lot 30-A to another entity such as Coral Reef Development; and (2) Tatibouet had not assigned any interest in Lot 30-A to Coral Reef Development, and Coral Reef Development was not the "LESSEE" and did not have the rights of the "LESSEE" under the Lot 30-A Amended Lease.

paid the judgment for attorney's fees and costs plus accrued interest.[5]

## B.

Defendants filed a notice of appeal from the circuit court's: (1) "Final Judgment"; (2) "Findings of Fact, Conclusions of Law and Order," which granted The Foundation's complaint for declaratory judgment; (3) "Order Granting The Queen Emma Foundation's Motion for Recovery of Attorney's Fees and Costs"; (4) "Order Denying Defendants' Motion to Alter or Amend the Findings of Fact, Conclusions of Law and Order"; and 5) "Order Denying Defendants Andre Stephen Tatibouet's and Coral Reef Development, LLC's Motion for Summary Judgment . . . ."

In their opening brief, Defendants argue that the circuit court erred in granting The Foundation's complaint for declaratory judgment, and they challenge numerous findings of fact and conclusions of law issued by the circuit court in support of its decision. Defendants also argue that the circuit court erred in awarding attorney's fees and costs to The Foundation because The Foundation should not have been the prevailing party. In addition, Defendants assert that the circuit court erred in: (1) permitting the introduction of expert testimony on questions of law; (2) denying Defendants' motion to alter or amend the "Findings of Fact, Conclusions of Law and Order," which granted The Foundation's complaint for declaratory judgment; and (3) denying Defendants' motion for summary judgment.

After Defendants filed their opening brief and before The Foundation's answering brief was due, Tatibouet filed for bankruptcy, which automatically stayed this appeal. As a result of the automatic stay, this appeal lay dormant for three years.[6] As part of the bankruptcy proceeding, Taitbouet assigned and

---

[5] Tatibouet asserts that he paid the judgment for attorney's fees and costs because he could not afford a supersedeas bond and because The Foundation took the position that non-payment would constitute a breach of the Lot 30-A Amended Lease.

[6] There is no indication that Tatibouet attempted to seek relief from the bankruptcy stay to pursue this appeal.

7

conveyed his interest in the Lot 30-A Amended Lease to a third party. In addition, on December 7, 2007, Coral Reef Development was administratively terminated by the DCCA for failure to file annual reports and pay required fees. This appeal resumed after Defendants notified this court in 2008 that a Final Decree had been entered in Tatibouet's bankruptcy proceeding.

## II.  STANDARDS OF REVIEW

### A.  Mootness

Courts "may not decide moot questions or abstract propositions of law." Life of the Land v. Burns, 59 Haw. 244, 250, 580 P.2d 405, 409 (1978) (citation and internal quotation marks omitted). "It is axiomatic that mootness is an issue of subject matter jurisdiction. Whether a court possesses subject matter jurisdiction is a question of law reviewable de novo." Hamilton v. Lethem, 119 Hawai'i 1, 4-5, 193 P.3d 839, 842-43 (2008) (citation and internal quotation marks omitted).

### B.  Attorney's Fees and Costs

"The trial court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard." Kamaka v. Goodsill Anderson Quinn & Stifel, 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008) (citation, internal quotation marks, and brackets omitted).

## III.  DISCUSSION

### A.  Mootness

We first address the argument raised by The Foundation in its motion to dismiss this appeal and in its answering brief that the mootness doctrine bars our consideration of Defendants' claims.

### 1.

In general, "this court does not have jurisdiction to decide abstract propositions of law or moot cases." Lathrop v. Sakatani, 111 Hawai'i 307, 312, 141 P.3d 480, 485 (2006) (citation, internal quotation marks, and brackets omitted). "A case is moot where the question to be determined is abstract and

does not rest on existing facts or rights." In re Application of
Thomas, 73 Haw. 223, 226, 832 P.2d 253, 254 (1992).

> A case is moot if it has lost its character as a
> present, live controversy of the kind that must exist if
> courts are to avoid advisory opinions on abstract
> propositions of law.  The rule is one of the prudential rules
> of judicial self-governance founded in concern about the
> proper -- and properly limited -- role of the courts in a
> democratic society.  We have said the suit must remain alive
> throughout the course of litigation to the moment of final
> appellate disposition to escape the mootness bar.

Kona Old Hawaiian Trails Group v. Lyman, 69 Haw. 81, 87, 734 P.2d
161, 165 (1987) (citations, internal quotation marks, and brackets
omitted).

> The mootness doctrine is said to encompass the
> circumstances that destroy the justiciability of a suit
> previously suitable for determination.  Put another way, the
> suit must remain alive throughout the course of litigation to
> the moment of final appellate disposition.  Its chief purpose
> is to assure that the adversary system, once set in
> operation, remains properly fueled.  The doctrine seems
> appropriate where events subsequent to the judgment of the
> trial court have so affected the relations between the
> parties that the two conditions for justiciability relevant
> on appeal -- adverse interest and effective remedy -- have
> been compromised.

Lathrop, 111 Hawai'i at 312-13, 141 P.3d at 485-86 (citations and
block quote format omitted).

The Foundation contends that Defendants' appeal has been
rendered moot by the transfer of Tatibouet's interest in the Lot
30-A Amended Lease and the Hotel to a third party during
Tatibouet's bankruptcy proceeding and by the administrative
termination of Coral Reef Development.  In support of its motion
to dismiss on mootness grounds, The Foundation submitted the
following documents:

1.    A "Notice of Payment Defaults and Other Material
Defaults" (Default Notice) filed on December 7, 2006, in
Tatibouet's bankruptcy proceeding, which stated that as the result
of Tatibouet's default on a loan agreement, "title to [the Hotel]
and [Tatibouet's] interest in the ground lease thereto shall be
conveyed" to a third party.[2/]

---

[2/] The Default Notice provided that the conveyance shall take place
"without the need of a further order" of the bankruptcy court, unless

(continued...)

2.     An "Assignment of Lease" dated December 21, 2006, filed in the Office of the Assistant Registrar of the Land Court, State of Hawai'i, in which Tatibouet assigned and conveyed his interest in the Lot 30-A Amended Lease to a third party.

3.     A "Certificate of Administrative Termination" issued by the DCCA, dated December 7, 2007, which states that Coral Reef Development was administratively terminated for failure to file annual reports and pay required fees.[8/]

The Foundation argues that based on the events established by these documents, "it is undisputed that [Defendants] have no current interest whatsoever" in the Lot 30-A Amended Lease and the Hotel.  The Foundation accordingly asserts that Defendants "no longer have any putative 'right' or ability to complete their leasehold condominiumization scheme."  In sum, The Foundation argues that the appeal is moot because a decision by this court on the circuit court's interpretation of the Lot 30-A Amended Lease "would equate to an advisory opinion on an abstract point of law."

Defendants do not dispute that Tatibouet has assigned and conveyed his interest in the Lot 30-A Amended Lease and the Hotel to a third-party.  Nor do they dispute that Coral Reef Development has been administratively terminated.  However, Defendants argue that the appeal is not moot because (1) Tatibouet has a direct financial stake in the appeal since he is challenging the circuit court's award of attorneys' fees and costs, and he is

---

[7/] (...continued)
Tatibouet or the creditors committee filed a motion contesting the default and the bankruptcy court entered an order finding that no material default had occurred.

[8/] Defendants acknowledge, and we agree, that "on motions related to mootnesss, the appellate court may consider matters outside the record . . . ."  This proposition is supported by case authority.  See, e.g., Anderson v. Cain, 27 Haw. 415, 419 (Haw. Terr. 1923) (concluding that facts that do not appear on the record, but which show that an appeal has been rendered moot, "may be proved by extrinsic evidence"); Iowa Mut. Ins. Co. v. McCarthy, 572 N.W.2d 537, 540 n.1 (Iowa 1997); State ex rel. Nelson v. Russo, 729 N.E.2d 1181, 1182 (Ohio 2000).  Defendants do not challenge the accuracy of the documents submitted by The Foundation.  We therefore consider these documents in determining whether the claims raised by Defendants in this appeal are moot.

challenging the circuit court's award on the basis that The Foundation should not have been the prevailing party; and (2) Tatibouet may file an action against The Foundation for breach of the Lot 30-A Amended Lease, which Tatibouet claims he cannot do unless the circuit court's judgment granting declaratory relief is vacated.

2.

We conclude that events occurring after the circuit court's entry of its Final Judgment have rendered Defendants' challenge to the circuit court's grant of declaratory relief moot. As noted, Tatibouet does not dispute that he has transferred his interest in the Lot 30-A Amended Lease and the Hotel and to a third party or that Coral Reef Development has been administratively terminated. Therefore, the controversy underlying The Foundation's complaint for declaratory judgment and the circuit court's grant of declaratory relief -- whether Defendants are entitled to convert the Hotel into a condominium under the Lot 30-A Amended Lease -- is no longer a present, live controversy.

Because Defendants no longer have an interest in the Lot 30-A Amended Lease, they do not have a present adverse interest vis-à-vis The Foundation with respect to the interpretation of the Lot 30-A Amended Lease. A decision by this court overturning the circuit court's grant of declaratory relief on the merits would not provide Defendants with an effective remedy regarding their dispute with the Foundation over their entitlement under the Lot 30-A Amended Lease to convert the Hotel into a condominium. Even if we were to adopt Defendants' interpretation of the Lot 30-A Amended Lease, they no longer have the ability to carry out their plans to convert the Hotel into a condominium. Thus, a decision by this court on the merits of the circuit court's interpretation of the Lot 30-A Amended Lease and the circuit court's grant of declaratory relief would be an advisory opinion on abstract propositions of law. See Lathrop, 111 Hawai'i at 312, 141 P.3d at 485 ("Courts will not consume time deciding abstract propositions of law or moot cases, and have no jurisdiction to do so." (quoting

11

Wong v. Bd. of Regents, Univ. of Hawai'i, 62 Haw. 391, 395, 616 P.2d 201, 204 (1980)).

                                    3.

          Tatibouet contends that his challenge to the circuit court's grant of declaratory relief is not moot because he may bring a damages claim against The Foundation for breach of the Lot 30-A Amended Lease.  Tatibouet asserts that unless the circuit court's declaratory judgment is vacated, his damages claim will be barred by "issue preclusion" arising from the circuit court's declaratory judgment.[9/]  We conclude that the possibility that Tatibouet may file a damages claim is too speculative and remote to save his challenge to the circuit court's grant of declaratory judgment from being moot, especially since he may not have the right to bring such a claim by virtue of his bankruptcy proceeding.

          In their opposition to The Foundation's motion to dismiss on mootness grounds, Defendants initially asserted that Tatibouet only assigned his interest in the Lot 30-A Amended Lease and did not assign or transfer the damages claim to anyone else.  However, Defendants later filed an "errata" in which they advised this court that the assertion that Tatibouet did not assign or transfer his damages claim "may be incorrect."  Defendants stated that their review of certain documents "indicates that claims 'relating to the Real Property' (defined as the land under the [H]otel) may have been assigned."  Defendants also stated that they were reviewing additional documents "to determine the nature and extent of any such assignment" and requested leave "to file a supplemental memorandum on the effect of any such assignment on the instant appeal."  Defendants did not thereafter identify or

_____

          [9/] As the basis for his "issue preclusion" argument, Tatibouet cites Hawaii Revised Statutes (HRS) § 632-3 (1993), which provides:

          **Further relief upon judgment.**  Further relief based on a declaratory judgment may be granted whenever necessary or proper, after reasonable notice and hearing, against any adverse party whose rights have been adjudicated by the judgment.

                                    12

provide this court with any supplemental information on this issue.

In addition, as the result of Tatibouet's bankruptcy filing, any damages claim that might be asserted may properly belong to Tatibouet's bankruptcy estate. Virtually all of a debtor's assets, including causes of action that belong to the debtor at the commencement of a bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition. 11 U.S.C. § 541(a)(1) (2006); Turner v. Cook, 362 F.3d 1219, 1225-26 (9th Cir. 2004) (concluding that when the debtor declared bankruptcy, all the debtor's legal or equitable interests in his property, including causes of action, "became the property of the bankruptcy estate and are represented by the bankruptcy trustee").

In support of its motion to dismiss, The Foundation submitted the "Debtor's Schedules, Statement of Financial Affairs, and Amended Mailing Matrix" (Debtor's Schedules) filed by Tatibouet in his bankruptcy case.[10] The Debtor's Schedules filed by Tatibouet did not identify an affirmative claim or cause of action against The Foundation for damages or breach of the Lot 30-A Amended Lease. In response to The Foundation's submissions, Defendants did not proffer evidence that the bankruptcy trustee had abandoned any such claim or cause of action.[11] If Tatibouet's purported cause of action for damages against The Foundation was not scheduled or abandoned in

---

[10] As noted in footnote 8, supra, we may consider matters outside the record in determining whether a claim raised on appeal has been rendered moot. In addition, we have the discretion, which we exercise here, to take judicial notice of documents filed in Tatibouet's bankruptcy case. See Hawai'i Rules of Evidence Rule 201 (1993); Roxas v. Marcos, 89 Hawai'i 91, 111 n.9, 969 P.2d 1209, 1229 n.9 (1998) (stating that "[c]ourts . . . may, in appropriate circumstances, take notice of proceedings in other courts, both within and without their judicial system[,] if those proceedings have a direct relation to the matter at issue" (citation omitted) (brackets in original)); Onaka v. Onaka, 112 Hawai'i 374, 386 n.15, 146 P.3d 89, 101 n.15 (2006) (taking judicial notice on appeal of the record in a related bankruptcy case).

[11] By order dated June 12, 2008, this court denied The Foundation's motion to supplement the record with exhibits relating to The Foundation's mootness argument, but ruled that we may consider such exhibits in deciding The Foundation's motion to dismiss on mootness grounds. We also ruled that Defendants may submit relevant evidence responding to The Foundation's exhibits.

Tatibouet's bankruptcy case, then it is still property of the bankruptcy estate, and the bankruptcy trustee may reopen Tatibouet's bankruptcy case to administer this asset on behalf of the creditors. 11 U.S.C. §§ 350(b) and 554 (2006); Cusano v. Klein, 264 F.3d 936, 945-46 (9th Cir. 2001) (stating that "[i]f [the debtor] failed properly to schedule an asset, including a cause of action, that asset continues to belong to the bankruptcy estate and did not revert to [the debtor]"); In re Lopez, 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002) (granting a motion to reopen a case in which the debtor failed to disclose a cause of action in her schedules, noting that "property that is neither abandoned nor administered remains property of the estate even after the case is closed").

Tatibouet has not shown, in light of his bankruptcy proceeding, that he has the right to bring a claim for damages against The Foundation for breach of the Lot 30-A Amended Lease. Given the speculative and remote nature of Tatibouet's purported damages claim, the possibility that Tatibouet may seek to assert a damages claim is insufficient to save his challenge to the circuit court's grant of declaratory judgment from being moot.

4.

Tatibouet argues that his challenge to the circuit court's award of attorney's fees and costs on the ground that he, and not The Foundation, should have been the prevailing party saves the underlying controversy over whether the Lot 30-A Amended Lease entitled Defendants to convert the Hotel into a condominium from being moot. We disagree.

Hawai'i has not addressed the specific question of whether a claim for attorneys' fees and costs keeps alive an otherwise moot controversy. However, courts from other jurisdictions that have considered this question, including the United States Supreme Court, have concluded that a dispute over attorney's fees and costs does not permit adjudication of an otherwise moot controversy. See, e.g., Lewis v. Continental Bank Corp., 494 U.S. 472, 480 (1990) (holding that an interest in attorneys' fees is not enough to create an Article III case or

14

controversy when the underlying case is moot); Center for Biological Diversity v. Marina Point Development Co., 566 F.3d 794, 805-06 (9th Cir. 2009) (lead opinion) (citing numerous cases in support of the proposition that when a matter becomes moot, an appellate court cannot review the merits of the underlying dispute to determine whether an attorneys' fees award was proper); Ott v. Boston Edison Co., 602 N.E.2d 566, 568 (Mass. 1992) ("A potential claim for attorneys' fees standing alone does not justify deciding a moot case."); Dept. of Education v. Rodarte, 127 F.Supp.2d 1103, 1113-14 (D. Haw. 2000) (holding that the pending question regarding the propriety of an attorneys' fees and costs award for the prevailing party in an appeal from an administrative decision did not save the underlying dispute from being moot).

We agree with these cases and conclude that Defendants' appeal of the circuit court's award of attorneys' fees and costs does not save the underlying controversy over whether the Lot 30-A Amended Lease entitled Defendants to convert the Hotel into a condominium from being moot. Accordingly, we dismiss as moot Defendants' claims on appeal that challenge the circuit court's grant of declaratory judgment in favor of The Foundation. For the same reasons, we also dismiss as moot Defendants' claim on appeal that the circuit court erred in denying their motion for summary judgment.

B. Attorneys' Fees and Costs

The question then becomes how should we resolve Defendants' appeal of the attorneys' fees costs award. We adopt the approach of the courts that have concluded that "[a]lthough a claim for attorney's fees does not preserve a case which has otherwise become moot on appeal, . . . the question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction." United States v. Ford, 650 F.2d 1141, 1144 (9th Cir. 1981); see Bishop v. Committee on Professional Ethics and Conduct of the Iowa State Bar, 686 F.2d 1278, 1290 (1982); Rodarte, 127 F.Supp.2d at 1115-17. Where the underlying controversy has become moot, "there is no right to review or redetermine any of the issues in the

underlying action solely for the purpose of deciding the attorney's fees question." Ford, 650 F.2d at 1144 n.1. Instead, the question of attorney's fees and costs must be decided based on whether the recipient of the attorney's fees and costs award can be considered to be the prevailing party in the underlying action, "without regard to whether we think the [trial] court's decision on the underlying merits is correct." Bishop, 686 F.2d at 1290; see Bagby v. Beal, 606 F.2d 411, 414-15 (3d. Cir. 1979). We have jurisdiction, under this approach, to decide Defendants' challenge to the circuit court's award of attorney's fees and costs.

The court in Rodarte confronted a situation analogous to the one we face in the instant appeal. Rodarte involved an administrative hearing decision in favor of a disabled student and her mother (collectively, the "student") and against the Hawai'i State Department of Education (DOE) on a claim brought by the student under the Individuals with Disabilities in Education Act. Rodarte, 127 F.Supp.2d at 1104-08. The DOE appealed to the federal district court from the adverse administrative hearing decision, and the student sought attorney's fees and costs as the prevailing party in the administrative hearing. Id. at 1107. The district court found that the DOE's appeal of the administrative hearing decision was moot because the student had already received the compensatory education ordered by the hearing officer and had graduated from high school. Id. at 1111-12. At issue, then, was how the mootness of the DOE's appeal affected the attorneys' fees and costs analysis. In other words, whether the court was required, despite the mootness of the DOE's appeal, to decide if the student should have been the prevailing party. Id. at 1115.

The court noted that as a general rule, an appellee is no longer a "prevailing party" and must return attorneys' fees awarded when the appellee loses on the merits on appeal (i.e., "a favorable judgment on the merits in a lower proceeding is reversed on appeal"). Id. However, the court concluded that it was not required to decide the merits of the moot appeal solely for the purpose of determining if the student should be the prevailing party with respect to the attorneys' fees award. Id. The court

asserted that it "can find no case stating that if an appeal is moot, a court is nevertheless obliged to investigate the merits in order to determine who should have been the prevailing party for purposes of allocating attorneys' fees." Id. On the other hand, the court cited several precedents supporting the view that when an appeal is moot, the court should not inquire into the correctness of the underlying decision, but should look to the outcome of the litigation in determining whether a party was the prevailing party. Id. at 1115-16.

Based on its survey of the relevant precedents, the court found that "it need not determine who the prevailing party would be in the instant case had the appeal not been moot. Instead it will simply analyze whether [the student] meets the test for a 'prevailing party' based on the outcome of the administrative hearing." Id. at 1116. The court concluded that the student was the prevailing party in that the student succeeded on a significant issue in the litigation which modified the DOE's behavior in the student's favor. Id. at 1117. The court therefore granted the student's motion for summary judgment for attorney's fees and costs. Id.

As in Rodarte, we examine whether The Foundation was the "prevailing party" based on the outcome of the circuit court proceedings and without inquiring into the correctness of the circuit court's grant of declaratory judgment on the merits. In general, a prevailing party is a party who has "prevail[ed] on the disputed main issue, even though not to the extent of [the party's] original contention . . . ." Food Pantry, Ltd. v. Waikiki Business Plaza, Inc., 58 Haw. 606, 620, 575 P.2d 869, 879 (1978); see Kamaka, 117 Hawai'i at 126, 176 P.3d at 125 (stating that "for purposes of HRS § 607-14 [(the statute cited by The Foundation in support of its request for attorneys' fees)], the party in whose favor judgment was entered is the prevailing party").

Here, based on the outcome of the circuit court proceedings, it is clear that The Foundation was the prevailing party. The Foundation sought a declaratory judgment, based on its

interpretation of the Lot 30-A Amended Lease, that "Defendants are not entitled to convert the Coral Reef Hotel into a condominium." The purpose of the litigation was to prevent Defendants from going forward with their plans to convert the Hotel into a condominium. The circuit court granted The Foundation's complaint for declaratory judgment, which effectively stopped Defendants from continuing with their plans. Viewing the outcome of the circuit court proceedings without considering the underlying merits of the circuit court's decision, we conclude that The Foundation was the prevailing party and affirm the circuit court's award of attorneys' fees and costs. See Rodarte, 127 F.Supp.2d at 1114-17; Center For Biological Diversity, 566 F.3d at 805-06 (lead opinion).[12]/

IV. CONCLUSION

For the foregoing reasons, we dismiss as moot: (1) Defendants' claims on appeal that challenge the circuit court's grant of declaratory judgment in favor of The Foundation; and (2) Defendants' claim on appeal that the circuit court erred in

---

[12]/ We note that in Center for Biological Diversity, 566 F.3d at 804, the permanent injunction granted to the appellees under the Endangered Species Act (ESA) for the protection of bald eagles became moot on appeal when the bald eagle was taken off the endangered species list. Both the concurring and dissenting opinions questioned whether the mootness of the appeal and the appellate court's decision to vacate the trial court's judgment under the ESA also required that the trial court's award of attorneys' fees to appellees as the prevailing party on the ESA claim be vacated. The concurring opinion, feeling bound by existing precedent, answered the question in the negative and joined the lead opinion in upholding the award of attorneys' fees under the ESA without considering the merits of the underlying ESA claim. Id. at 807-08. The dissent, which distinguished prior precedent, answered the question in the affirmative. Id. at 808-10.

Unlike in Center for Biological Diversity, the relief obtained by The Foundation was not vitiated and undone by subsequent events. In addition, the appellants in Center for Biological Diversity did not play a role in the case becoming moot. Here, the case became moot because Tatibouet transferred his interests in the Lot 30-A Amended Lease to a third party during his bankruptcy proceeding. See generally U.S. Bancorp Mortgage Co. v. Bonner Mall Partnership, 513 U.S. 18, 23-29 (1994) (holding that mootness created by the parties' settlement did not warrant vacating the lower court's judgment and concluding that whether the party seeking relief from the judgment below caused the mootness by voluntary action was the principal condition considered in determining whether vacatur was appropriate). In these respects, the circumstances presented by this case are different from those presented in Center for Biological Diversity.

denying their motion for summary judgment.  We affirm the portion of the circuit court's July 22, 2004, Final Judgment which entered judgment in favor of The Foundation and against Tatibouet and Coral Reef Development for attorneys' fees and costs.


On the briefs:

Rosemary T. Fazio
Kevin W. Herring
Jill M. Hasegawa
for Plaintiff-Appellee

James T. Bickerton
K. Bartlett Durand, Jr.
Terrence M. Lee
Nadine Y. Ando
(Bickerton Lee Dang &
      Sullivan)
William Meheula
(Winer Meheula & Devens)
for Defendants-Appellants