**Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000235
20-NOV-2020
07:51 AM
Dkt. 78 MO**

NO. CAAP-15-0000235

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I


ROBLYNN WAILANA DASALIA, LEIGHTON NIAKALA PANG KEE,
AND VICKI ELAINE ULSH, Plaintiffs-Appellees,
v.
DR. ALVIN ONAKA, in his official capacity as the
REGISTRAR OF VITAL STATISTICS, OFFICE OF HEALTH STATUS
MONITORING, DEPARTMENT OF HEALTH; AND THE DEPARTMENT
OF HEALTH, STATE OF HAWAI'I, Defendants-Appellants


APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CIVIL NO. 13-1-0373)


MEMORANDUM OPINION
(By:  Ginoza, Chief Judge, Leonard and Hiraoka, JJ.)

Defendants-Appellants Dr. Alvin Onaka, in his official capacity as the Registrar of Vital Statistics, Office of Health Status Monitoring, Department of Health (**Onaka**) and the Department of Health, State of Hawai'i (**DOH**) (collectively the **State**) appeal from the "Final Judgment as to All Claims and All Parties" (**Final Judgment**) entered on February 27, 2015, by the Circuit Court of the First Circuit (**Circuit Court**).[1]  The State challenges the rulings by the Circuit Court that: granted summary judgment in favor of Plaintiffs-Appellees Roblynn Wailana Dasalia (**Plaintiff Dasalia**), Leighton Niakala Pang Kee (**Plaintiff Pang Kee**), and Vicki Elaine Ulsh (**Plaintiff Ulsh**) (collectively

_____

[1]  The Honorable Karl L. Sakamoto presided over all proceedings.

**Plaintiffs**); denied reconsideration of the summary judgment ruling; and awarded attorneys' fees and costs to Plaintiffs.

On appeal, the State asserts the following points on appeal: (1) the Circuit Court erroneously concluded that paternity is a "factual error" that a person is entitled to "correct" on his or her birth certificate pursuant to DOH regulations and Hawaii Revised Statutes (**HRS**) §§ 92F-24 (2012), 338-15 (2010) and 338-17 (2010); (2) the Circuit Court erroneously concluded that DOH could determine paternity on its own, without a court order; and (3) the Circuit Court erred in awarding attorneys' fees to Plaintiffs pursuant to HRS § 92F-27 (2012).

We conclude the first two points on appeal are moot, but affirm the award of attorneys' fees and costs to Plaintiffs.

## I.  Background

Plaintiffs sought to have DOH make additions to, or change, their original birth certificate with regard to the identity and ethnicity of their respective father, without a court order.  The State responded that a court order was required.  Plaintiffs then brought this action and the Circuit Court granted summary judgment in favor of Plaintiffs, ruling that the DOH had the authority to make the changes without a court order.  Subsequent to its summary judgment ruling, however, the Circuit Court also granted a motion by Plaintiffs to determine their respective natural fathers and ordered DOH to amend each of their respective original birth certificates to reflect the Circuit Court's determination.

In this appeal, the State does not challenge the Circuit Court's determination as to the natural father for each Plaintiff and the order to DOH to amend the original birth certificate for each Plaintiff.  Rather, the State challenges the Circuit Court's rulings that DOH had the authority to make the changes without a court order and also the Circuit Court's award of attorneys' fees and costs to Plaintiffs.

### A.  Undisputed Facts

In 2012, separately on behalf of each of the Plaintiffs, the Native Hawaiian Legal Corporation (**NHLC**) sent a letter to DOH stating that it was submitting an "Application for Major Administrative Amendment of Birth Certificate."[2]  In each letter, NHLC sought to either "supplement" or "correct" the original birth certificate of the respective Plaintiff with "the name and racial information" for that Plaintiff's biological father, pursuant to HRS § 338-15, HRS Chapter 92F, and DOH's Public Health Regulations (**PHR**) Chapter 8B Rules 3.2, 3.3, 3.4, and 3.5.[3]

Each of the Plaintiffs have circumstances particular to their situation, and therefore, we briefly discuss the background for each.

### 1.  Plaintiff Dasalia

Plaintiff Dasalia was born to mother Paulann Leimomi Dasalia, who was unmarried at that time.  Plaintiff Dasalia's birth certificate does not list a father or his race.  Prior to

---

[2]  It appears the letter itself was intended as the "application," as there is no separate document attached that is referenced or titled as an application.

[3]  At the time of the Circuit Court proceedings, HRS § 338-15 provided:

> **§338-15  Late or altered certificates.**  A person born in the State may file or amend a certificate after the time prescribed, upon submitting proof as required by rules adopted by the department of health.  Certificates registered after the time prescribed for filing by the rules of the department of health shall be registered subject to any evidentiary requirements that the department adopts by rule to substantiate the alleged facts of birth.

With regard to HRS Chapter 92F (Uniform Information Practices Act), Plaintiffs specifically relied on HRS § 92F-24(a), which states: "An individual has a right to have any factual error in that person's personal record corrected and any misrepresentation or misleading entry in the record amended by the agency which is responsible for its maintenance."  The State's position is that the lack of a father named on a birth certificate, or the name of an individual other than the biological father, is not a "factual error."

PHR Chapter 8B Rules are located in Chapter 117 of Title 11 of the Hawaii Administrative Rules.  The text of the relevant PHR rules are set forth *infra*.

the instant case, Plaintiff Dasalia's original birth certificate had not been amended.

NHLC sent a letter dated June 25, 2012, to DOH on behalf of Plaintiff Dasalia.  The letter noted that no father is listed on Plaintiff Dasalia's original birth certificate and stated the application for Plaintiff Dasalia sought to "supplement the information contained on [Plaintiff Dasalia's] original certificate to include the name and racial information for her biological father, [Robert Kaho'iwai Ho'opi'i (**Robert Ho'opi'i**)]."  Documents submitted with the letter included: Plaintiff Dasalia's original birth certificate; DNA test results asserted to show the biological relationship between Plaintiff Dasalia and Robert Ho'opi'i; and an affidavit by Robert Ho'opi'i attesting in part that "I have five children including my daughter Roblynn Wailana Dasalia."

### 2.  Plaintiff Pang Kee

Plaintiff Pang Kee was born to mother Florence Kanani Silva, who was unmarried at that time.  Plaintiff Pang Kee's original birth certificate did not list a father or his race.  Thereafter, his mother married Anthony Pa'alani Kim You Pang Kee (**Anthony Pang Kee**), Plaintiff Pang Kee was adopted at the age of four years old by Anthony Pang Kee, and a new birth certificate was issued listing Anthony Pang Kee as Plaintiff Pang Kee's father.

NHLC sent a letter dated April 4, 2012, to DOH on behalf of Plaintiff Pang Kee.  The letter noted that no father is listed on Plaintiff Pang Kee's original birth certificate and that the application for Plaintiff Pang Kee sought to "supplement the information contained on [Plaintiff Pang Kee's] original certificate to include the name and racial information for his biological father, Mr. Earick Kukonu, Sr. (**Earick Kukonu, Sr.**), who died on April 28, 1983."  Documents submitted with the letter included: DNA test results asserted to show a biological relationship between Plaintiff Pang Kee and Rodney Kukonu, Earick Kukonu, Sr.'s full biological brother; declarations of individuals involved in administering or overseeing the DNA test;

4

a declaration by Plaintiff Pang Kee requesting to supplement his original birth certificate; and a copy of Plaintiff Pang Kee's original birth certificate.

### 3.  Plaintiff Ulsh

Plaintiff Ulsh was born to mother Grace Agnes Ann Konet Wong (**Grace Wong**) who, at that time, was married to Horace Koon Fong Wong (**Horace Wong**).  Plaintiff Ulsh's original birth certificate listed Grace Wong as her mother and Horace Wong as her father.  Following Plaintiff Ulsh's parents' divorce, Grace Wong married James Edward Anderson (**James Anderson**), who adopted Plaintiff Ulsh.  Plaintiff Ulsh was subsequently issued a new birth certificate listing James Anderson as her father.

NHLC sent a letter dated August 15, 2012, to DOH on behalf of Plaintiff Ulsh.  The letter noted that Plaintiff Ulsh's original birth certificate lists Horace Wong as her father, that he is not her biological father, that upon Plaintiff Ulsh's later adoption by James Anderson her original birth certificate was sealed and an amended birth certificate identifies James Anderson as her father.  The letter sought to "correct the information contained on [Plaintiff Ulsh's] original certificate to include the name and racial information for her biological father, Mr. Charles Kauhiaimokuakama Ahlo ([**Charles Ahlo**]), who died on November 17, 2007."  Documents submitted with the letter included: DNA test results and a supporting declaration asserted to show the biological relationship between Plaintiff Ulsh and Charles Ahlo; the declaration of Plaintiff Ulsh; the declaration of Plaintiff Ulsh's mother, now known as Grace Kaonohi; and the declaration of Charles Ahlo, dated July 12, 2007, in which he attested, *inter alia*, "I am the biological father of Mrs. Vicki Elaine Ulsh," that he had acknowledged to Plaintiff Ulsh, family members and close friends that he was Plaintiff Ulsh's father, and that he would bring Plaintiff Ulsh to his family home throughout her childhood.

### 4.  DOH's denial of the requests

DOH denied each of the application requests submitted by NHLC.  With regard to Plaintiff Dasalia, the DOH stated that

she should seek a court order to determine paternity.  With regard to Plaintiff Pang Kee and Plaintiff Dasalia, the DOH stated that "a change in a parent on a birth certificate is a 'Judicial amendment'" pursuant to PHR Chapter 8B section 3.4.A, and not a "Major administrative amendment" as defined by PHR Chapter 8B section 3.4.B.  DOH further stated that Plaintiff Pang Kee and Plaintiff Ulsh's respective adoptions legally prevented DOH from modifying their original birth certificates: "[o]nce an adoption decree is entered, adoption records are sealed pursuant to HRS § 578-15."

### B.  Procedural History

On February 8, 2013, Plaintiffs filed a "Complaint for Declaratory Judgment" in the Circuit Court, requesting review of the DOH's denial of their respective requests "pursuant to [HRS] Chapter 92F, § 338-15, and the Department's Public Health Regulations Chapter 8B . . . Rules 3.2, 3.3, 3.4, and 3.5." Plaintiffs made the following requests for relief:

> A.  For an order declaring that a major administrative amendment is the proper means by which to amend the original birth certificates of [Plaintiffs];
>
> B.  For an order declaring that Defendant Department of Health has the authority to amend the original birth certificates of [Plaintiffs] without a court order;
>
> C.  For an order requiring Defendant Department of Health to make a determination as to whether the evidence provided in support of the applications for major administrative amendment submitted by [Plaintiffs] entitles them to a major administrative amendment;
>
> D.  For an order declaring that Defendants violated the rights of [Plaintiffs] to amend their birth certificates;
>
> E.  Grant [Plaintiffs] their attorney's fees and costs pursuant to HRS Chapter 92F-27.
>
> F.  For such other and further relief as this Court deems appropriate.

On March 22, 2013, the State filed their Answer.

On September 6, 2013, Plaintiffs filed their Motion for Summary Judgment, requesting the same relief as in their Complaint.

On October 3, 2013, the Circuit Court held a hearing on the Plaintiffs' Motion for Summary Judgment, and orally ruled that given PHR Chapter 8B Rules 3.4 and 3.5,[4]

---

[4] PHR Chapter 8B Rules 3.4 and 3.5 provide:

    3.4   Classification of Amendments
        A.    *Judicial amendments.* Changes in name, alterations, additions, deletions or substitutions in data originally entered which are ordered by a court of competent jurisdiction.
        B.    *Major administrative amendments.* Alterations, additions, deletions or substitutions in data originally entered which materially affect the validity or integrity of a certificate or would substantially modify fundamental relationships contained therein.
        C.    *Minor administrative amendments.* All other changes including but not limited to typographical errors, spelling errors, transposed errors, and alterations, additions, deletions or substitutions in data originally entered which would not materially affect the validity or integrity of a certificate or would not substantially modify any fundamental relationship on it.

    3.5   Amendments to Birth and Fetal Death Certificates
        A.  Judicial amendments include:
            (1)   Supplementary birth certificates based on adoption, legitimation or <u>paternity determination</u>.
            (2)   Amendment of birth certificate to show a change of name by change of name decree or court order.
            (3)   Amendment of information registered through misrepresentation or fraud.
        B.  Major administrative amendments include:
            (1)   Supplementary birth certificates or amendments based on adoption, legitimation, or <u>paternity</u> done in accordance with law or regulations <u>not ordered by a court</u>.
            (2)   Any substantial alteration of the surname of the registrant not covered by change of name decree or court order.
            (3)   Change in sex of registrant based on surgical alteration.
            (4)   Registration of given name(s) for the first time six years or more after birth.
            (5)   Change in given name(s) of the registrant ninety days or more after date of birth.
            (6)   Change of name of either parent except minor spelling errors.
            (7)   Change in date or place of the birth.
            (8)   Change in sex of child, type of birth and medical data relating to delivery and post natal period.
            (9)   Change in date and place of birth of

(continued...)

7

when read in conjunction with HRS §§ 92F-24, 338-17[5] and 338-15, DOH has the authority to "amend any factual errors in a certificate including determination of the birth father for purposes of ancestral facts."  The Circuit Court further held that, because Plaintiffs are seeking to establish "genealogical ancestry" and "not trying to establish a child and parent relationship for the purpose of insuring that they receive support benefits from their respective fathers[,]" HRS Chapter 584 (titled "Determination of father and child relationship; who may bring action; when action may be brought; process, warrant, bond, etc.") is not applicable.  Rather, the Circuit Court noted that HRS Chapter 338 and the rules under PHR Chapter 8B provide alternative means, separate and apart from HRS Chapter 584, for amending a birth certificate.

On December 5, 2013, the Circuit Court entered its Order granting Plaintiffs' Motion for Summary Judgment (**12/5/13 Order**).

On December 13, 2013, the State filed a Motion for Reconsideration of the 12/5/13 Order.  The Circuit Court denied the motion.

On May 22, 2014, the Plaintiffs filed a "Motion for Judicial Determination and an Order Requiring Defendant

---

(...continued)
```
                            either parent.
             (10)   Change in marital status of the mother.
             (11)   Change in medical cause of death and
                    related information on the fetal death
                    certificate.
       C.  Minor administrative amendments include:
             (1)    Minor errors in spelling, typographical
                    errors or corrections of transposed
                    letters.
             (2)    Registration of given name(s) for the
                    first time prior to age six.
             (3)    Change in given name(s) prior to 90 days
                    of age.
```

(Emphases added).

[5]  Although the Circuit Court referenced HRS § 338-17, it does not appear to be applicable as it provides that: "[t]he probative value of a 'late' or 'altered' certificate shall be determined by the judicial or administrative body or official before whom the certificate is offered as evidence."

Department of Health to Amend Plaintiffs' Birth Certificates" (**5/22/14 Motion**), requesting that the Circuit Court "make a judicial determination as to the identity of Plaintiffs' natural fathers and ultimately order [DOH] to amend Plaintiffs' birth certificates accordingly."

On June 20, 2014, the Circuit Court held a hearing and orally granted the Plaintiffs' 5/22/14 Motion with regards to all Plaintiffs. On July 24, 2014, the Circuit Court entered its "Order Granting Plaintiffs' Motion for Judicial Determination and an Order Requiring [the State] to Amend Plaintiffs' Birth Certificates filed May 22, 2014" (**Order Granting Judicial Determination**).

On September 18, 2014, Plaintiffs moved for an award of attorneys' fees and costs against the State. On December 4, 2014, the Circuit Court entered its "Order Granting Plaintiffs' Motion for Attorneys' Fees and Costs" (**12/4/14 Order**), pursuant to HRS § 92F-27(e) (2012),[6] in which it awarded to Plaintiffs attorneys' fees in the amount of $40,985.50 and costs in the amount of $968.12.

On February 27, 2015, the Circuit Court issued its "Final Judgment as to All Claims and All Parties" in favor of Plaintiffs.

## II. Discussion

### A. The first two points of error raised by the State are moot

The first two issues on appeal raised by the State address whether the circuit court erred in granting summary judgment to Plaintiffs on the question of whether DOH had the authority, without court order, to make the requested changes to their birth certificates. In its opening brief on appeal, the State expressly states it does not challenge the Circuit Court's rulings in its Order Granting Judicial Determination, in which

---

[6] HRS § 92F-27(e) provides that "[t]he court may assess reasonable attorney's fees and other litigation costs reasonably incurred against the agency in any case in which the complainant has substantially prevailed, and against the complainant where the charges brought against the agency were frivolous."

the Circuit Court determined the natural father for each of the Plaintiffs and ordered DOH to amend the respective original birth certificates for each of the Plaintiffs.[7]

Given the Order Granting Judicial Determination, we must address whether this appeal is moot because Plaintiffs have achieved the requested change to their original birth certificates that they sought from DOH, and the State does not challenge that ruling on appeal.  The Hawai‘i Supreme Court has stated:

> A case is moot if it has lost its character as a present, live controversy of the kind that must exist if courts are to avoid advisory opinions on abstract propositions of law. The rule is one of the prudential rules of judicial self-governance founded in concern about the proper—and properly limited—role of the courts in a democratic society. We have said the suit must remain alive throughout the course of litigation to the moment of final appellate disposition to escape the mootness bar.

Kaho‘ohanohano v. State, 114 Hawai‘i 302, 332, 162 P.3d 696, 726 (2007) (emphasis and citations omitted).  Further, the Hawai‘i Supreme Court has expressed:

> The mootness doctrine is said to encompass the circumstances that destroy the justiciability of a suit previously suitable for determination.  Put another way, the suit must remain alive throughout the course of litigation to the moment of final appellate disposition.  Its chief purpose is to assure that the adversary system, once set in operation, remains properly fueled.  The doctrine seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

Hamilton ex rel. Lethem v. Lethem, 119 Hawai‘i 1, 5, 193 P.3d 839, 843 (2008) (citations omitted).

As noted above, the Plaintiffs' Complaint sought declaratory relief.

> [I]n determining whether parties still retain sufficient interests and injury as to justify the award of declaratory relief, the question is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant a declaratory judgment.

---

[7]  The Circuit Court determined that Plaintiff Dasalia's natural father is Robert Ho‘opi‘i, that Plaintiff Pang Kee's natural father is Earick Leialoha Kukonu, that Plaintiff Ulsh's natural father is Charles Ahlo, and ordered DOH to amend the original birth certificate of each Plaintiff to reflect the court's determination.

Kahoʻohanohano, 114 Hawaiʻi at 332, 162 P.3d at 726 (citations omitted).  In paragraph 44 of their Complaint, Plaintiffs assert: "By reason of Defendants' refusal to amend Plaintiffs' original birth certificate via a major administrative amendment to reflect the identity of their biological fathers, there exists an actual ongoing controversy between Plaintiffs and Defendants within the meaning of HRS Chapter 632."  However, in light of the Circuit Court's unchallenged Order Granting Judicial Determination, the circumstances no longer remain the same.

We conclude that, given these circumstances, the issues raised by the State in its first two points of error are moot.  Further, none of the exceptions to mootness apply in this case.

With regard to the "capable of repetition yet evading review" exception, the Hawaiʻi Supreme Court has stated:

> The phrase, "capable of repetition, yet evading review," means that "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."

Hamilton ex rel. Lethem, 119 Hawaiʻi at 5, 193 P.3d at 843 (quoting In re Thomas, 73 Haw. 223, 226–27, 832 P.2d 253, 255 (1992)).  This exception does not apply in this instance, as the passage of time would not "prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."  Id.  Here, in addition to ruling on DOH's authority to independently make the requested changes, the Circuit Court further made the determination as to the Plaintiffs' natural fathers and then ordered DOH to change the respective birth certificates accordingly.  Those subsequent rulings, along with the State's decision not to challenge them on appeal, renders this case moot, but need not be the situation in other cases.

Additionally, the legal landscape has changed such that it seems doubtful that the case is "capable of repetition."  In 2016, Act 26 was adopted, titled "Relating to Amending Identity

of Registrant's Parent on a Birth Certificate."  Act 26 amended
HRS § 338-15 by adding the following underlined language:

> **§338-15 Late or altered certificates.**  A person born in the
> State may file or amend a certificate after the time
> prescribed, upon submitting proof as required by rules
> adopted by the department of health.  Certificates
> registered after the time prescribed for filing by the rules
> of the department of health shall be registered subject to
> any evidentiary requirements that the department adopts by
> rule to substantiate the alleged facts of birth.  The
> department may amend a birth certificate to change or
> establish the identity of a registrant's parent only
> pursuant to a court order from a court of appropriate
> jurisdiction or pursuant to a legal establishment of
> parenthood pursuant to chapter 584.  Amendments that change
> or establish the identity of a registrant's parent that are
> made in accordance with this section shall not be considered
> corrections of personal records pursuant to chapter 92F.

2016 Haw. Sess. Laws Act 26, § 1 at 31.  Act 26 took effect upon
its approval on April 27, 2016.  2016 Haw. Sess. Laws Act 26, § 3
at 31.  Act 26 is not directly applicable to this case, however
it addresses the primary issue that the Circuit Court addressed,
*i.e.,* whether HRS § 92F-24(a), in combination with HRS § 338-15,
authorized the DOH to make changes to the Plaintiffs' birth
certificates without a court order.[8]  As intended by the
Legislature, it appears that Act 26 has clarified the law on the
issues raised in this case.

With regard to the "public interest" exception to
mootness, we consider "(1) the public or private nature of the
question presented, (2) the desirability of an authoritative
determination for future guidance of public officers, and (3) the

---

[8]  Two of the four committee reports related to House Bill (**H.B.**) 939, which became Act 26, indicate that a reason for the bill was because individuals had sued the DOH related to changing a parent on a birth certificate.  The case is not named, but appears to be the instant action. See S. Stand. Comm. Rep. No. 2893, in 2016 Senate Journal, at 1246-47; S. Stand. Comm. Rep. No. 3572, in 2016 Senate Journal, at 1538.  Each of the committee reports indicate H.B. 939 was intended to clarify the law. See H. Stand. Comm. Rep. No. 6-16, in 2016 House Journal, at 759 ("The purpose of this measure is to clarify that amendments to birth certificates to change or establish the identity of a registrant's parents may be made by the Department of Health only pursuant to a court order or the legal establishment of parenthood in accordance with the Uniform Parentage Act and not as a correction to a personal record under the Uniform Information Practices Act."); H. Stand. Comm. Rep. No. 338, in 2015 House Journal, at 894 (This report was issued in 2015 because H.B. 939 was a carry-over bill introduced in the 2015 legislative session and adopted in the Regular Session of 2016); S. Stand. Comm. Rep. No. 2893, in 2016 Senate Journal, at 1246; S. Stand. Comm. Rep. No. 3572, in 2016 Senate Journal, at 1538.

likelihood of future recurrence of the question."  Hamilton ex rel. Lethem, 119 Hawai'i at 6-7, 193 P.3d at 844-45 (citations omitted).  Here, the question is private in nature, affecting the birth certificates of the three Plaintiffs.  Moreover, given the adoption of Act 26, the relevant statutes have been clarified to provide guidance for DOH and, as noted above, it appears unlikely that there would be a recurrence of the question raised in this case.

The "collateral consequences" exception to mootness has been adopted in Hawai'i with regard to "domestic violence [Temporary Restraining Orders (**TROs**)] where there is a reasonable possibility that prejudicial collateral consequences will occur as a result of the entry of the TRO[,]" id. at 9-10, 193 P.3d at 847-48 (quotation marks omitted), and in a family court matter based on the Child Protective Act and the collateral consequences to a parent's visitation rights.  In re Doe, 81 Hawai'i 91, 99, 912 P.2d 588, 596 (App. 1996).  The "collateral consequences" exception is not applicable here.

We note that the State's third point of error challenges the Circuit Court's award to Plaintiffs of attorneys' fees in the amount of $40,985.50 and costs in the amount of $968.12 under HRS § 92F-27(e), which provides in relevant part that "[t]he court may assess reasonable attorney's fees and other litigation costs reasonably incurred against the agency in any case in which the complainant has substantially prevailed." However, the State's appeal of the attorneys' fees and costs award does not save the other issues from being moot.  In Queen Emma Foundation v. Tatibouet, 123 Hawai'i 500, 510, 236 P.3d 1236, 1246 (App. 2010), we addressed the question of "whether a claim for attorneys' fees and costs keeps alive an otherwise moot controversy."  There, the circuit court had awarded the plaintiff attorneys' fees and costs as the prevailing party under the subject lease in that case and HRS § 607-14.  Id. at 505, 236 P.3d at 1241.  After determining that the substantive issues under the lease were moot, id. at 507-09, 236 P.3d at 1243-45, we cited cases from the U.S. Supreme Court and other jurisdictions

in holding that the defendants' appeal of the attorneys' fees and costs award did not save the substantive issues from being moot. Id. at 510, 236 P.3d at 1246.

Applying the analysis in Queen Emma Foundation, the State's first two points on appeal in this case remain moot, notwithstanding the State's appeal of the attorneys' fees and costs award.

### B.  Award of Attorneys' Fees and Costs

Although the substantive issues remain moot, under Queen Emma Foundation, we have jurisdiction to review the award of attorneys' fees and costs as follows:

> We adopt the approach of the courts that have concluded that "[a]lthough a claim for attorney's fees does not preserve a case which has otherwise become moot on appeal, ... the question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction." United States v. Ford, 650 F.2d 1141, 1144 (9th Cir. 1981); see Bishop v. Committee on Professional Ethics and Conduct of the Iowa State Bar, 686 F.2d 1278, 1290 (1982); Rodarte, 127 F.Supp.2d at 1115–17. Where the underlying controversy has become moot, "there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question." Ford, 650 F.2d at 1144 n. 1. Instead, the question of attorney's fees and costs must be decided based on whether the recipient of the attorney's fees and costs award can be considered to be the prevailing party in the underlying action, "without regard to whether we think the [trial] court's decision on the underlying merits is correct." Bishop, 686 F.2d at 1290; see Bagby v. Beal, 606 F.2d 411, 414–15 (3d Cir. 1979). We have jurisdiction, under this approach, to decide Defendants' challenge to the circuit court's award of attorney's fees and costs.

Id.

Plaintiffs' Complaint asserts that it is brought, in part, pursuant to HRS § 92F-27(a), which provides: "(a) An individual may bring a civil action against an agency in a circuit court of the State whenever an agency fails to comply with any provision of this part, and after appropriate administrative remedies under sections 92F-23, 92F-24, and 92F-25 have been exhausted."  The Circuit Court's substantive ruling, whether we agree with it or not, was that the DOH had the authority under HRS §§ 92F-24 and 338-15 to make the changes requested by the Plaintiffs to their original birth certificates,

without a court order.  As noted above, the Circuit Court then awarded Plaintiffs attorneys' fees and costs under HRS § 92F-27(e), which states that "[t]he court may assess reasonable attorney's fees and other litigation costs reasonably incurred against the agency in any case in which the complainant has substantially prevailed."  Under the Circuit Court's ruling on the substantive issue of DOH's authority under HRS §§ 92F-24 and 338-15 (which we do not review), the Plaintiffs substantially prevailed.  Given the standard under which we review it, the Circuit Court's award to Plaintiffs of attorneys' fees and costs under HRS § 92F-27(e) was not erroneous.

### III.  Conclusion

Based on the above, we do not address the merits of the State's first two points on appeal and dismiss the appeal as moot with regard to those issues.  We affirm the "Order Granting Plaintiffs' Motion for Attorneys' Fees and Costs," filed December 4, 2014.

DATED:  Honolulu, Hawaiʻi, November 20, 2020.


On the briefs:

Marissa H.I. Luning,
Deputy Solicitor General,
Department of the Attorney
General, for Defendants-
Appellants.

Camille K. Kalama,
Liʻulā E.K. Nakama,
for Plaintiffs-Appellees.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Keith K. Hiraoka
Associate Judge