Electronically Filed
Intermediate Court of Appeals
30696
31-OCT-2013
08:08 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

WILLIAM T. VINSON, Trustee of The Vinson Family Trust,
Plaintiff-Appellee,
v.
ASSOCIATION OF APARTMENT OWNERS OF SANDS OF KAHANA,
an unincorporated Hawaii condominium association,
Defendant-Appellant,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10;
DOE CORPORATIONS 1-10; and OTHER DOE ENTITIES 1-20,
Defendants.

NO. 30696

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(CIVIL NO. 09-1-0081(1))

OCTOBER 31, 2013

FOLEY, PRESIDING JUDGE, LEONARD AND GINOZA, JJ.

OPINION OF THE COURT BY GINOZA, J.

Defendant-Appellant Association of Apartment Owners of
Sands of Kahana (AOAO) appeals from a Final Judgment filed on
August 17, 2010, in the Circuit Court of the Second Circuit
(circuit court).[1]

---

[1] The Honorable Joel E. August presided.

The circuit court ruled in favor of Plaintiff-Appellee William T. Vinson (Vinson) and against the AOAO. The Final Judgment was granted in accordance with a January 13, 2010 "Order Granting Plaintiff William T. Vinson's Motion for Summary Judgment Filed on November 4, 2009, and Denying Defendant Association of Apartment Owners of Sands of Kahana's Cross-Motion for Summary Judgment on Plaintiff's Complaint" and an amended order filed on February 16, 2010 (Summary Judgment Orders).

Also, the Final Judgment awarded Vinson attorneys' fees and costs pursuant to Hawaii Revised Statutes (HRS) § 514B-157(b) (2006)[2] in accordance with an "Order Granting Attorney's Fees and Costs to Plaintiff" filed May 6, 2010 (Order Granting Fees/Costs).

On appeal, the AOAO contends that the circuit court erred when it: (1) concluded that HRS § 514B-153(e) (Supp. 2010)[3] required associations of apartment owners to maintain the names and current addresses of those who own a time share interest in apartment units (time share owners); (2) concluded that the term "member" of an association of apartment owners, as used in HRS § 514B-153(e), included time share owners; (3) concluded that HRS chapter 514E and HRS § 514B-153(h) did not exempt time share plans and time share owners from the requirements of HRS § 514B-153(e); and (4) awarded attorneys' fees and costs under HRS § 514B-157(b), including allegedly awarding fees and costs to non-parties over whom the court had no jurisdiction.

---

[2] HRS § 514B-157(b) provides in relevant part that "[i]f any claim by an owner is substantiated in any action against an association . . . to enforce any provision of the declaration, bylaws, house rules, or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an owner shall be awarded to such owner; . . . ."

[3] In 2010, HRS § 514B-153(e) stated in pertinent part that "[t]he managing agent, resident manager, or board shall keep an accurate and current list of members of the association and their current addresses . . . . [A] copy shall be available, at cost, to any member of the association as provided in the declaration or bylaws or rules and regulations or, in any case, to any member who furnishes to the managing agent or resident manager or the board a duly executed and acknowledged affidavit . . . ."

In his answering brief, Vinson asserts that this appeal is moot because the AOAO provided a membership list to Vinson that complied with the circuit court's order (compliant list).

In its reply brief, the AOAO responds that the appeal is not moot because the Final Judgment requires that the AOAO maintain a current list of individual time share owners, and thus the AOAO has an ongoing duty under the circuit court's judgment. The AOAO also argues that certain exceptions to mootness apply, including the collateral consequence that the Final Judgment in effect alters the property rights of owners by elevating time share owners to an equal status with unit owners.

Several months after briefing was completed in this appeal, the legislature amended HRS § 514B-153(e) through Act 98 of the 2011 legislative session, such that the following language was added to the statute:

> Where the condominium project or any units within the project are subject to a time share plan under Chapter 514E, the association shall only be required to maintain in its records the name and address of the time share association as the representative agent for the individual time share owners unless the association receives a request by a time share owner to maintain in its records the name and address of the time share owner.

2011 Haw. Sess. Laws Act 98, § 1 at 258-59 (emphasis added). Act 98 was approved and took effect on June 9, 2011. On July 13, 2011, we granted the AOAO's "Motion for Leave to File Supplemental Brief" to allow both parties to address Act 98.

In its supplemental brief, the AOAO asserts that despite Act 98, it is still subject to the circuit court's Final Judgment which requires the AOAO's continued performance under that judgment in contradiction to Act 98; that Act 98 does not relieve the AOAO of the expanded rights the AOAO asserts were given to time share owners via the Final Judgment; and the AOAO remains injured by the circuit court's award of attorneys' fees and costs.

In his supplemental brief, Vinson argues that Act 98 has no effect on this appeal because it applies prospectively, not retroactively. However, Vinson still asserts that this case

3

is moot because, as argued in his answering brief, the AOAO has already provided Vinson with the compliant list.

For the reasons stated below, we conclude that:

(1) the AOAO having provided the compliant list to Vinson, combined with the passage of Act 98, has rendered the AOAO's appeal on the merits moot;

(2) to alleviate concerns regarding any collateral effect the circuit court's statutory interpretation may have, we vacate (a) the summary judgment orders filed January 13, 2010, and February 16, 2010, and (b) the Final Judgment insofar as it addresses HRS § 514B-153;

(3) although the AOAO's appeal challenging the interpretation of HRS § 514B-153 is moot, the question of attorneys' fees and costs awarded to Vinson is ancillary to the underlying proceeding and we may address the fees and costs award under our equitable jurisdiction; and

(4) Vinson *incurred* only a part of the attorneys' fees and costs awarded to him under HRS § 514B-157(b) and thus the circuit court's award is affirmed to the extent that it awarded attorneys' fees of $1,700, plus general excise tax on that amount, but the award of fees and costs beyond that amount is reversed.

## I. Background

The basic facts of this case are not disputed.

The AOAO is the condominium homeowners' association at the Sands of Kahana (Sands), located on Maui. In total, there are 196 units at Sands, 144 of which are time share units. The other 52 units are either owned by individuals or small groups, and largely used as vacation or second homes (whole units).

The time share units were purchased by Consolidated Maui, Inc. and assigned into a time share plan owned and operated by the Sands of Kahana Vacation Club (Vacation Club), a non-profit corporation. Both parties agree that roughly 9,150 time share owners participate in this plan.

4

Vinson, as trustee of the Vinson Family Trust, owns a whole unit at Sands, and is not a member of the time share plan. On or about April 10, 2007, Vinson requested a copy of the AOAO's membership list that included all time share owners individually, including their respective addresses, via "a duly executed and acknowledged affidavit" pursuant to HRS § 514B-153(e). Vinson alleges the AOAO declined to provide a list identifying individual time share owners. On October 17, 2007, Vinson filed a lawsuit against the AOAO in a prior case (Civ. No. 07-1-0420(1)) to obtain the list as requested. Subsequently, the parties pursued mediation and the case was dismissed without prejudice.

After unsuccessful attempts at mediation, Vinson's attorney, on his behalf, requested a copy of the AOAO's membership list, including time share owners, in a letter dated January 21, 2009. In a letter dated January 29, 2009, the AOAO stated that it did not believe it was required under HRS § 514B-153(e) to maintain a list of individual time share owners, and instead provided a list with the name and address of the Vacation Club for each time share unit.

On February 3, 2009, Vinson filed the complaint for declaratory judgment in this case seeking to have the AOAO provide an accurate and current list of its members and their addresses, including all time share owners individually, and also requesting an award of attorneys' fees, expenses, and costs incurred in the action. On November 5, 2009, Vinson filed a motion for summary judgment and on November 13, 2009, the AOAO filed a cross-motion for summary judgment. On December 21, 2009, Vinson's counsel filed a "Declaration of William C. Byrns Regarding Award of Attorneys' Fees and Costs."

On January 13, 2010, the circuit court issued an order granting Vinson's motion for summary judgment and denying the AOAO's cross-motion. In the order, the circuit court interpreted HRS § 514B-153 to require associations of apartment owners to maintain the names and current addresses of individual time share

owners. The circuit court further interpreted the term "current addresses" to require the personal residential mailing addresses of each individual time share owner. On February 16, 2010, the circuit court amended its summary judgment order, redefining "current addresses" as "the mailing address of each unit or to any other mailing address designated in writing by the unit owner, consistent with HRS § 514B-121(c)(2)."

On February 11, 2010, the AOAO filed a Notice of Appeal. On June 28, 2010, this court dismissed the appeal for lack of jurisdiction because the circuit court had not reduced the summary judgment order to a separate judgment that resolved all claims against all parties as required by Hawaiʻi Rules of Civil Procedure (HRCP) Rule 58 and *Jenkins v. Cades Schutte Fleming & Wright*, 76 Hawaiʻi 115, 869 P.2d 1334 (1994).

On May 6, 2010, the circuit court filed the Order Granting Fees/Costs, awarding to Vinson the amount of $29,589.65. On August 17, 2010, the circuit court reduced all orders to a separate, final judgment. The AOAO timely appealed.

On November 4, 2010, the circuit court issued an order granting Vinson's motion to compel the AOAO to comply with the Final Judgment. Both parties agree that on or about January 3, 2011, the AOAO provided a membership list of time share owners and their addresses. The circuit court determined that the list complied with the Final Judgment.

On June 9, 2011, Act 98 was signed into law. 2011 Haw. Sess. Laws Act 98, § 1 at 258-59. As noted above, Act 98 amended HRS § 514B-153(e) so that associations for condominium projects must only maintain in its records the name and address of the time share association as the agent for the individual time share owners, unless the time share owner requests that the association maintain the name and address of the time share owner.

## II. Discussion

### A. Mootness

As stated in *Wong v. Bd. of Regents*, 62 Haw. 391, 616 P.2d 201 (1980):

> The duty of this court, as of every other judicial tribunal, is to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it.

*Id.* at 394-95, 616 P.2d at 204 (citations omitted). Further,

> [i]t is well-settled that the mootness doctrine encompasses the circumstances that destroy the justiciability of a case previously suitable for determination. A case is moot where the question to be determined is abstract and does not rest on existing facts or rights. Thus, the mootness doctrine is properly invoked where 'events . . . have so affected the relations between the parties that the two conditions for justiciability relevant on appeal-adverse interest and effective remedy-have been compromised.'

*McCabe Hamilton & Renny Co. v. Chung*, 98 Hawai'i 107, 116-17, 43 P.3d 244, 253-54 (App. 2002) (quoting *In re Thomas*, 73 Haw. 223, 225-26, 832 P.2d 253, 254 (1992)).

Act 98 and the AOAO's provision of the compliant list resolve all controversies regarding the AOAO's ongoing duties and Vinson's initial pursuit of declaratory judgment. There is no longer an adverse interest between the parties, nor any effective remedy that this court can provide. Therefore, we conclude that the relationship between the parties has been so affected as to compromise the justiciability of this matter. The appeal as to the merits is moot and we thus lack subject matter jurisdiction to review the circuit court's Summary Judgment Orders and the entry of Final Judgment based on the summary judgment ruling.

### 1. The Compliant List

Vinson argues that the AOAO's provision of the compliant list renders this appeal moot. In this case, Vinson sought declaratory relief that the AOAO was required to provide a membership list which included the names and addresses of individuals who owned time share interests in the Vacation Club time share plan. Vinson asserted that access to such a list was

7

his right as a member of the AOAO under HRS § 514B-153(e), which during the circuit court proceedings read in pertinent part:

> (e) The managing agent, resident manager or board shall keep an accurate and current list of members of the association and their current addresses . . . . The list shall be maintained at a place designated by the board, and a copy shall be available, at cost, to any member of the association as provided in the declaration or bylaws or rules and regulations or, in any case, to any member who furnishes to the managing agent or resident manager or the board a duly executed and acknowledged affidavit stating that the list:
>
> > (1) Will be used by the owner personally and only for the purpose of soliciting votes or proxies, or for providing information to other owners with respect to association matters; and
> >
> > (2) Shall not be used by the owner or furnished to anyone else for any other purpose.

As noted above, both parties agree that the AOAO has provided a membership list containing the names of individual time share owners and their address at the Sands. Also, both parties acknowledge that the circuit court declared this list complied with the court's Summary Judgment Orders and Final Judgment. Therefore, as Vinson expressly acknowledges, the relief he sought, procurement of a membership list that includes individual time share owners' names and addresses, has been accomplished. *Cf. Wong*, 62 Haw. at 396, 616 P.2d at 205 (holding that a request for declaratory judgment was no longer viable because the appellee had complied with statutory requirements post appeal and there was "nothing left to grant appellant").

As asserted by the AOAO, however, the Summary Judgment Orders and the Final Judgment require that the AOAO "maintain" a current membership list. To maintain means "[t]o continue (something)." Black's Law Dictionary 1039 (9th ed. 2009). Hence, the appeal related to the Summary Judgment Orders and resulting Final Judgment is not moot simply because the compliant list was provided.

Yet, the proffering of the list does contribute to mooting this appeal. This court cannot "require something to be done which ha[s] already taken place[,]" nor can it "avoid an

event which ha[s] already passed beyond recall." *McCabe Hamilton & Renny*, 98 Hawai'i at 117, 43 P.3d at 254 (quoting *Brownlow v. Schwartz*, 261 U.S. 216, 217-18 (1923)). The AOAO has provided no persuasive or clear argument as to how its interest would be affected or how we could provide it with an effective remedy by reaching the merits, ruling for the AOAO, and even ordering the return of the list.[4] The AOAO has already compiled the list and provided it to Vinson. Therefore, the provision of the compliant list does affect the justiciability of this appeal, but it is not dispositive as to the requirement that the AOAO "maintain" a current list.

### 2. Act 98

For different reasons, as noted above, the parties take the position that Act 98 does not render the AOAO's appeal on the merits moot. We disagree and conclude that Act 98 moots the question of the AOAO's ongoing obligation to maintain a current list of time share owners. Act 98 makes clear that the AOAO's duty going forward is to maintain a list identifying only the time share association as the representative of the individual owners, not the individual owners themselves, unless otherwise specified by the time share owner.

To the extent the AOAO argues that the circuit court's Summary Judgment Orders and Final Judgment would remain in effect absent our review of the merits, and thus bind the AOAO in direct contravention with Act 98, we have recognized in prior cases that the appropriate action is to vacate the unreviewed trial court judgment and direct dismissal of the case. *Aircall of Haw., Inc. v. Home Properties, Inc.*, 6 Haw. App. 593, 595, 733 P.2d 1231, 1232 (1987); *see also Exit Co. Ltd. P'ship v. Airlines Capital*

---

[4] The AOAO requests return of the compliant list "plus any copies, summaries or other documents, created with information derived from the list of time share owners." The AOAO does not articulate its reasons, but is apparently concerned about improper solicitations of the time share owners, where their names are conveniently contained on the list. The AOAO's asserted concern does not indicate how the AOAO's interest is affected. Moreover, the AOAO's stated concern is merely conjecture.

*Corp.*, 7 Haw. App. 363, 366, 766 P.2d 129, 131 (1988). In this case, vacating the Summary Judgment Orders and the Final Judgment to the extent that they interpret HRS § 514B-153 will alleviate any concerns by the AOAO that they have an ongoing obligation under these circuit court rulings, as well as their concern that these rulings have somehow elevated the rights of time share owners in an expansive manner.

We further address the AOAO's concern that its appeal should not be deemed moot because the circuit court improperly awarded attorneys' fees and costs to Vinson. In *Queen Emma Found. v. Tatibouet*, 123 Hawai'i 500, 236 P.3d 1236 (App. 2010), this court adopted the approach that, although the merits of the case on appeal may be moot, issues related to attorneys' fees and costs are still reviewable.

> [A]lthough a claim for attorney's fees does not preserve a case which has otherwise become moot on appeal, . . . the question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction. Where the underlying controversy has become moot, there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question. Instead, the question of attorney's fees and costs must be decided based on whether the recipient of the attorney's fees and costs award can be considered to be the prevailing party in the underlying action, without regard to whether we think the trial court's decision on the underlying merits is correct.

123 Haw. at 510, 236 P.3d at 1246 (citations, internal quotation marks and brackets omitted); *see also Bishop v. Committee on Prof'l Ethics and Conduct of the Iowa State Bar Ass'n*, 686 F.2d 1278, 1290 (8th Cir. 1982) ("[I]t has been generally held that the dismissal on appeal of the underlying claims on the merits on the grounds of mootness is neither precluded by an award of attorney's fees, nor does such a dismissal preclude an award of attorney's fees."); *Bagby v. Beal*, 606 F.2d 411 (3rd Cir. 1979) (ruling that appeal was moot, vacating judgment of district court, remanding with instructions to dismiss, and affirming district court's award of attorney's fees). Therefore, the AOAO's appeal from the circuit court's award of attorneys' fees

10

and costs does not preserve review of the underlying merits, but we will review the fees and costs award pursuant to *Tatibouet*.

B. **Attorneys' Fees and Costs**

Pursuant to HRS § 514B-157(b), the circuit court granted Vinson attorneys' fees and costs, plus general excise tax, in the total amount of $29,589.65. HRS § 514B-157(b) provides in relevant part that "[i]f any claim by an owner is substantiated in any action against an association . . . to enforce any provision of . . . this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by an owner shall be awarded to such owner[.]"

The AOAO challenges the circuit court's award of attorneys' fees and costs on two grounds. First, the AOAO asserts that Vinson's primary claim was for declaratory relief, which seeks to *establish* rights rather than *enforce* rights as required under HRS § 514B-157(b). Second, the AOAO contends that Vinson did not "incur" attorneys' fees or costs as required under HRS § 514B-157(b) because the requested fees and costs were billed to and paid, at least in part, by others who were not party to the case and Vinson made no showing that he was obligated to pay the fees and costs.

Pursuant to *Tatibouet*, we must determine if Vinson prevailed and is entitled to an award of attorneys' fees and costs given the outcome in the circuit court, without regard to whether we think the circuit court's decision on the underlying merits is correct. 123 Haw. at 510, 236 P.3d at 1246.

Additionally, "[t]he trial court's grant or denial of attorney's fees and costs is reviewed under the abuse of discretion standard." *Sierra Club v. Dep't of Transp.*, 120 Hawai'i 181, 197, 202 P.3d 1226, 1242 (2009) (citations, internal quotation marks and brackets omitted).

> The trial court abuses its discretion if it bases its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence. In other words, an abuse of discretion occurs where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of

> law or practice to the substantial detriment of a party litigant.

*Maui Tomorrow v. State of Haw., Bd. of Land & Natural Res.*, 110 Hawai'i 234, 242, 131 P.3d 517, 525 (2006) (citations, internal quotation marks and brackets omitted).

With regard to the AOAO's first argument, it is clear to us that Vinson's action was one to enforce a provision of HRS chapter 514B, specifically HRS § 514B-153(e). The AOAO's challenge in this regard is therefore without merit. Further, considering the requirements under HRS § 514B-157(b) for the award of attorneys' fees and costs, it is undisputed that Vinson is an owner and that his claim against the AOAO was substantiated by the circuit court's rulings.

The only serious question as to Vinson's entitlement to fees and costs under HRS § 514B-157(b) is thus whether Vinson "incurred" the fees and costs awarded by the circuit court within the meaning of HRS § 514B-157(b). In this case, the firm of MacDonald Rudy Byrns O'Neill & Yamauchi (MacDonald firm) represented Vinson. However, as the circuit court determined and as the record reflects, all billing invoices by the MacDonald firm were addressed to an entity named Sullivan Properties; there are no engagement letters or agreements between Vinson, Sullivan Properties or the MacDonald firm; and Vinson has paid only $1,700 of the requested fees. These facts are unchallenged. In a declaration dated April 8, 2010, Vinson attests, in relevant part, that:

3. To date I have personally paid $1,700 of attorney's fees in this matter.
4. The balance of the attorney's fees have been paid via contributions of other whole unit owners in the Sands of Kahana.
5. I do not have a written agreement with any of the other whole unit owners regarding payment of the attorney's fees.
6. My understanding is the other whole unit owners are contributing to the fees in this matter because they share my concerns about Consolidated Resort's control of our project.
7. Promptly upon the receipt of any attorney's fees awarded in this matter I will distribute such award, on a pro rata basis, to all contributing whole unit owners.

The circuit court ultimately concluded that, although no formal retainer agreement exists between Vinson and the MacDonald firm, the MacDonald firm could sue Vinson in quantum meruit or quasi-contract for services rendered if the fees and costs were not paid by the third parties. The circuit court thus awarded the challenged fees and costs.

Given these circumstances, we must determine whether Vinson "incurred" the attorneys' fees and costs awarded by the circuit court, as required by HRS § 514B-157(b).

> When construing a statute, our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. . . .
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> [The appellate] court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it . . . to discover its true meaning.

*Morgan v. Planning Dep't*, 104 Hawai'i 173, 179-80, 86 P.3d 982, 988-89 (2004) (citation omitted).

The term "incurred" is not defined in HRS § 514B-157(b) or elsewhere in HRS chapter 514B. Vinson argues that HRS § 514B-157(b) states that fees and costs incurred "shall" be awarded and therefore an award of fees and costs is mandated. Vinson's argument, however, ignores the requirement in the statute that the fees and costs be "incurred."

Black's Law Dictionary defines "incur" to mean "to suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 836 (9th ed. 2009). Yet, it is still unclear whether one can "incur" attorneys' fees and costs for purposes of

this particular statute, when a third party finances the legal
representation.

There is nothing in the context of HRS Chapter 514B
that suggests how we should interpret the term "incurred" in this
case.  Generally speaking, HRS § 514B-157 entitles both
associations and owners to obtain reasonable attorneys' fees and
costs incurred for *inter alia* substantiating claims to enforce
HRS chapter 514B.  Because the statute is ambiguous as to whether
Vinson "incurred" the attorneys' fees and costs awarded by the
circuit court, we thus consider the legislative history of
HRS § 514B-157.  However, the legislative history does not assist
us in clarifying the definition of "incurred".[5]

We therefore turn to existing Hawai'i case law that
generally considered whether attorneys' fees should be awarded
where a question was raised whether such fees had been incurred.
In *Wiginton v. Pac. Credit Corporation*, 2 Haw. App. 435, 634 P.2d
111 (1981), the plaintiff, represented by the Legal Aid Society
of Hawai'i (LASH), brought claims for unfair and deceptive
practices and asserted that he was entitled to attorneys' fees
under HRS § 480-13 (1976), which allowed for reasonable
attorneys' fees to a prevailing plaintiff.  *Id.* at 439-40, 446,
634 P.2d at 115-16, 120.  The defendant argued that because
plaintiff was represented by LASH, the plaintiff had not incurred
attorneys' fees and would thus be unjustly enriched.  This court
ruled that the plaintiff should not receive a windfall, but that
if the plaintiff could show that he was "legally obligated" to

---

[5]  The Legislature enacted HRS § 514B-157 in 2004 as part of a
comprehensive recodification of Hawaii's "Condominium Property Regime" Law
(which prior to 1988 was referred to as "Horizontal Property Regimes").  *See*
2004 Haw. Sess. Laws Act 164, §§ 1 at 755, 2 at 795-96; 1988 Haw. Sess Laws
Act 65, § 1 at 98.  The predecessor to HRS § 514B-157 is HRS § 514A-94 (Supp.
1977), which in turn was preceded by HRS § 514-7.5 (1976).  *See* 1977 Haw.
Sess. Laws Act 98, §2 at 180-81; 1976 Haw. Sess. Laws Act 239, § 1 at 757-58.
The statute has been amended over time, including the adoption of subsection
(b) in 1983.  *See* 1983 Haw. Sess. Laws Act 137, § 1 at 250.  The word
"incurred" has been a part of the statute since its original adoption in 1976.
*See* HRS § 514-7.5.  However, there is nothing in the legislative history which
illuminates the question of how we should interpret "incurred" in subsection
(b) given the circumstances in this case.

pay LASH the fees that were recovered, then attorneys' fees could be awarded. *Id.* at 446-47, 634 P.2d at 120; *see also* Morrison v. Comm'r, 565 F.3d 658 (9th Cir. 2009).

We therefore hold that in order for Vinson to have "incurred" attorneys' fees and costs under HRS § 514B-157(b), he must have paid or be legally obligated to pay such fees and costs to the MacDonald firm. In this case, based on the undisputed record, Vinson paid only $1,700 in fees; he has no agreement with the MacDonald firm contractually binding him to pay fees and costs; and, although Vinson attests that he would share fees awarded to him pro rata with contributing whole unit owners, he has no agreement with the third parties legally obligating him to repay them for the amounts they have paid or will pay. Moreover, the billing statements by the MacDonald firm were addressed to Sullivan Properties -- not Vinson -- and the billing entries indicate a variety of communications by the attorneys with individuals other than Vinson. We thus conclude that the circuit court based its award of attorneys' fees and costs on an erroneous view of the law when it determined that Vinson would prevail on a quantum meruit claim and thus was entitled to fees and costs. Such a conclusion is speculative on this record and Vinson, as the party requesting the award of fees and costs, failed to demonstrate his entitlement to such fees and costs beyond the $1,700 he has paid.

The circuit court thus abused its discretion to the extent it awarded Vinson attorneys' fees and costs beyond $1,700 and the general excise tax thereon.

## III. Conclusion

Based on the foregoing, the following orders and judgments entered by the circuit court are hereby vacated:

1) the portions of the Final Judgment filed on August 17, 2010, pertaining to summary judgment and HRS § 514B-153;

2) the January 13, 2010 summary judgment order; and

3) the February 16, 2010 summary judgment order.

The Final Judgment as it pertains to attorneys' fees and costs and the "Order Granting Attorney's Fees and Costs to Plaintiff" filed on May 6, 2010, are affirmed to the extent that they awarded attorneys' fees to Vinson in the amount of $1,700, plus the general excise tax on that amount. The award of fees and costs beyond that amount is reversed.

The case is remanded to the circuit court with instructions to dismiss the case.

On the briefs:

Matt A. Tsukazaki
(Li & Tsukazaki,
  Attorneys at Law, LLLC)
for Defendant-Appellant

William C. Byrns
Ralph J. O'Neill
(MacDonald Rudy Byrns O'Neill
  & Yamauchi)
for Plaintiff-Appellee

16