**Electronically Filed**
**Intermediate Court of Appeals**
**CAAP-13-0003397**
**31-JUL-2017**
**01:08 PM**

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

---o0o---

IN THE MATTER OF
THE ESTATE OF ETHEL CAMACHO, Deceased.

_____

IN THE MATTER OF
THE ETHEL CAMACHO LIVING TRUST DATED MARCH 3, 2008.

_____

NEPHI DANIEL IOANE CAMACHO,
Petitioner-Appellee,
v.
BEVERLY J. CALKOVSKY,
Respondent- Appellant.

NO. CAAP-13-0003397

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(PROBATE NO. 08-1-0192, TRUST NO. 08-1-0094)

JULY 31, 2017

NAKAMURA, CHIEF JUDGE, AND REIFURTH AND GINOZA, JJ.

OPINION OF THE COURT BY NAKAMURA, CHIEF JUDGE

Prior to her death in 2008, Ethel Camacho (Ethel) executed wills in 1998, 2000, and 2004. The 1998 will left Ethel's entire estate to her two grandsons, Nephi Daniel Ioane Camacho (Nephi) and Moses Antonio Ioane Camacho (Moses), and

nominated Nephi as the personal representative, after Ethel's son, the original sole beneficiary of the will, predeceased her in 1999. The 2000 and 2004 wills left Ethel's entire estate to her daughter, Beverly Calkovsky (Beverly), and nominated Beverly as the personal representative. After Ethel's death, Nephi and Beverly engaged in a will contest, with Nephi contending that the 1998 will was Ethel's last validly executed will and Beverly contending that either the 2000 will or the 2004 will was the last validly executed will. After a trial, the jury found that the 2000 will was Ethel's last validly executed will.

Nephi had retained lawyers who represented him on a contingency fee basis, and because Nephi was unsuccessful in his will contest, he apparently was not obligated to pay any attorneys' fees to his lawyers. However, it appears that Nephi was obligated to pay for litigation costs. Nephi filed a motion for attorneys' fees and costs pursuant Hawaii Revised Statutes (HRS) § 560:3-720 (2006), which provides:

> If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not that person is entitled to receive from the estate that person's necessary expenses and disbursements including reasonable attorneys' fees incurred.

Nephi requested a total of $345,736.78 in attorneys' fees (including general excise tax) and $42,754.09 in costs to be paid by Ethel's estate, which was valued at approximately $1.5 million at the time of her death. The Circuit Court of the First Circuit (Circuit Court)[1] granted Nephi's entire request for attorneys' fees and costs, and it ordered Ethel's estate to pay Nephi's lawyers a total of $388,490.87 in legal fees, general excise tax, and costs.

Beverly appeals from the "First Amended Final Judgment" (Amended Judgment), which entered judgment in favor of Nephi in the amount of $388,490.87 for attorneys' fees and costs. The

---

[1] The Honorable Patrick W. Border presided over the proceedings relevant to this appeal.

2

principal question presented by this appeal is whether under HRS § 560:3-720, Nephi was entitled to recover attorneys' fees from Ethel's estate where Nephi was not obligated to pay his attorneys any legal fees because of their contingency fee agreement. As explained below, we conclude that the answer to this question is "no." We therefore vacate the Amended Judgment to the extent that it entered judgment in favor of Nephi and against Ethel's estate for attorneys' fees.

It appears that Nephi was obligated to pay for costs he incurred. We conclude that under HRS § 560:3-720, Nephi was entitled to an award of his necessary costs. However, the record is insufficient for us to determine whether all the costs requested by Nephi were necessary, and we remand the case for further proceedings on this issue.

BACKGROUND

I.

At the outset, we note that Respondent-Appellant Beverly did not include the trial transcripts as part of the record on appeal. This Background Section is therefore based on information contained in the pleadings filed by the parties and the non-trial transcripts included in the record.

II.

Prior to her death in 2008, Ethel owned and lived on real property located on 8th Avenue in Honolulu (the Property). The Property contained three dwellings, had a property tax assessment value of $1,463,800 in 2008, and was the primary asset of Ethel's estate.

Beginning in 1998, Nephi and his family lived in one of the dwellings on the Property. On November 2, 1998, Camacho executed a "Last Will and Testament of Ethel Camacho" (1998 Will). The 1998 Will nominated Ethel's son, John F. Camacho, Jr. (John), as personal representative and bequeathed Ethel's entire estate to John. The 1998 Will also provided that if John predeceased Ethel, Nephi would be nominated as personal representative, and Ethel's estate would pass equally to Nephi

3

and Moses. The 1998 Will provided no bequest to Ethel's daughter, Beverly, and it stated, "I have intentionally not provided for my other child, Beverly Joyce Calkovsky, as she has been adequately been [sic] provided for during my lifetime." John passed away in 1999, and therefore, under the 1998 Will, Nephi became the person nominated as personal representative, and Nephi and Moses became the devisees of Ethel's estate.

In 2000, Nephi and his family moved from the Property. Beverly and Nephi disagree over the reason for Nephi's moving. Beverly asserts that Ethel had a falling out with Nephi and his wife and that Ethel asked them to leave. Nephi asserts that after signing the 1998 Will, Ethel began exhibiting increasing signs of dementia in 1999 and early 2000, including the delusion that Nephi and his wife were attempting to poison Ethel, which prompted Nephi and his family to leave the Property in 2000.

In February 2000, Ethel tore up the 1998 Will and signed a notarized affidavit prepared by her lawyer, Lester Oshiro, stating that she intended to die intestate.

On July 13, 2000, Ethel executed a "Last Will and Testament of Ethel Camacho" (2000 Will), which revoked all prior wills. The 2000 Will nominated Beverly as personal representative and bequeathed Ethel's entire estate to Beverly. On April 1, 2004, Ethel executed a "Last Will and Testament of Ethel Camacho" (2004 Will), which revoked all prior wills. The 2004 Will, like the 2000 Will, nominated Beverly as personal representative and bequeathed Ethel's entire estate to Beverly.

On March 3, 2008, Beverly, using a power of attorney granted by Ethel in 2004, created a revocable living trust for Ethel (Ethel's Trust), and transferred the Property into Ethel's Trust. Ethel's Trust named Beverly as Trustee and provided that upon Ethel's death, the trust estate would be distributed to Beverly. Ethel passed away on March 13, 2008.

III.

Shortly after Ethel's death, Nephi filed an "Application for Informal Probate of Will and for Informal

4

Appointment of Personal Representative" (Informal Probate Application). Nephi based his claim for priority of appointment as personal representative on his nomination in Ethel's 1998 Will and his status as a devisee under that will and an heir of Ethel. In the Informal Probate Application, Nephi stated that "[t]o the best of [his] knowledge," the 1998 Will was validly executed and that "[a]fter exercise of reasonable diligence," he believed the 1998 Will was Ethel's last will and had not been revoked. On April 11, 2008, the Probate Court Registrar informally appointed Nephi as personal representative of Ethel's estate. Nephi sent notice of his application and appointment as personal representative to Beverly.

After receiving this notice, Beverly filed objections to Nephi's application and appointment, citing Ethel's 2004 Will, which Beverly asserted had "superseded" the 1998 Will. Beverly also cited Ethel's Trust.

IV.

Beverly subsequently filed a petition to set aside and terminate Nephi's appointment as personal representative and to have the case transferred from informal probate to formal probate. Nephi and Moses filed a response to Beverly's petition. Their response alleged, among other things, that "Nephi Camacho observed in year 2000 that Ethel had developed profound symptoms of dementia which included paranoia, confusion, delusional thought which included the belief that neighbors were trying to kill her" and that "[d]uring the year 2000, Nephi was told by various heath care providers for Ethel that she was suffering from progressive dementia." Nephi and Moses also alleged that Ethel lacked testamentary capacity when she executed the 2004 Will; that Beverly exercised undue influence to cause Ethel to execute the 2004 Will; that Ethel was mistaken as to the content and meaning of the 2004 Will; and that Ethel lacked the capacity to contract and grant Beverly a power of attorney. Nephi and

5

Moses requested that the case be transferred to formal probate; that a jury trial be held to resolve contested matters; that Ethel's 1998 Will be admitted to probate; and that Ethel's 2004 Will, the power of attorney granted to Beverly, Ethel's Trust, and the transfer of the Property into Ethel's Trust be declared null and void.[2/]

The Circuit Court found that Beverly's petition constituted a contested matter and transferred it from the regular probate calendar to the civil trials calendar. The case was set for a jury trial. Prior to trial, Moses was dismissed as a party from the case.

Beverly's petition and her opposition to Nephi's appointment as personal representative had been based on Ethel's 2004 Will. However, before the initially scheduled trial date, Beverly disclosed that Ethel had executed the 2000 Will. It was also disclosed that prior to executing the 2000 Will, Ethel had torn up the 1998 Will and signed an affidavit on February 7, 2000, stating that she intended to die intestate.

V.

Nephi sought to prove at trial that Ethel's 1998 Will was valid, but that Ethel's subsequent February 7, 2000, affidavit, her 2000 Will, and her 2004 Will were all invalid because Ethel lacked testamentary capacity when she executed them.[3/] The jury found that the 2004 Will was invalid, but that the 2000 Will, which revoked the 1998 Will, was validly executed. Because the jury found that the 2000 Will was valid, it was instructed that it need not decide whether Ethel had revoked the 1998 Will by allegedly tearing it up or by signing the February 7, 2000, affidavit. After the jury returned its verdict, Beverly

---

[2/] Nephi and Moses also filed a separate petition in a trust proceeding seeking the same basic relief.

[3/] Prior to trial, the Circuit Court granted summary judgment for Beverly with respect to Nephi's claim that Beverly procured the 2004 Will through undue influence, and Nephi withdrew his claim that Ethel was mistaken as to the contents of the 2004 Will when she signed it.

filed a petition to probate the 2000 Will and for appointment as personal representative, which was granted by the Circuit Court.

## VI.

After the conclusion of trial, Nephi filed his motion for attorneys' fees and costs. Nephi argued that he defended the 1998 Will in good faith and was entitled to reasonable attorneys' fees and costs pursuant to HRS § 560:3-720. In total, Nephi claimed $388,490.87 in attorneys' fees and costs. Beverly filed objections to Nephi's motion for attorneys' fees and costs. Among other arguments, Beverly asserted that Nephi was not entitled to recover attorneys' fees because he had retained his lawyers on a contingency fee basis. To support this assertion, Beverly's attorney submitted a declaration stating that "[d]uring the course of litigation I personally had a discussion with lead [counsel for Nephi] and he informed that [Nephi] had retained counsel on a contingency fee basis."

The Circuit Court held a hearing on Nephi's motion. During the hearing, the Circuit Court stated that "the litigation was neither frivolous nor in bad faith. The motion is neither frivolous nor in bad faith." After the hearing, the Circuit Court issued a written order granting Nephi's motion for attorneys' fees and costs pursuant to HRS § 560:3-720. The Circuit Court approved all of the attorneys' fees and costs Nephi requested, and it ordered Ethel's estate to pay Nephi's lawyers $330,178.75 in legal fees, $15,558.03 in general excise tax, and $42,754.09 in costs, for a total award of $388,490.87. On September 4, 2013, the Circuit Court filed its Amended Judgment, which among other things, entered judgment "in favor of Nephi in the amount of $388,490.87 for his attorneys' fees and costs incurred[.]" Neither the Circuit Court's written order granting Nephi's motion nor the Amended Judgment made findings regarding good faith or stated explicit reasons justifying the Circuit Court's award. Beverly appeals from the Amended Judgment.

DISCUSSION

I.

A.

Pursuant to HRS § 560:3-720, the Circuit Court granted Nephi's request that Ethel's estate pay $345,736.78 in attorneys' fees (including general excise tax) and $42,754.09 in costs for Nephi's unsuccessful will contest. HRS § 560:3-720 provides:

> If any personal representative or person nominated as personal representative defends or prosecutes any proceeding in good faith, whether successful or not that person is entitled to receive from the estate that person's necessary expenses and disbursements including reasonable attorneys' fees incurred.

On appeal, Beverly raises numerous challenges to the Circuit Court's decision to grant Nephi's request for attorneys' fees and costs.[4] With respect to attorneys' fees, we conclude that the pivotal claim raised by Beverly is that HRS § 560:3-720 does not authorize an award of attorneys' fees to Nephi because, based on his contingency fee arrangement, Nephi was not obligated to pay attorneys' fees to his attorneys for his unsuccessful will contest. We hold that HRS § 560:3-720 does not authorize the award of attorneys' fees from the estate to a nominated personal representative who is unsuccessful in a will contest and who is

---

[4] Beverly asserts eleven points of error: (1) the Circuit Court erred by failing to state the statutory basis for its award of attorneys' fees and costs, find that Nephi acted in good faith, or address Beverly's objections to the fees and costs as unauthorized and excessive; (2) Nephi lacked good faith to initiate or persist in his will contest; (3) HRS § 560:3-720 does not apply to personal representatives who unsuccessfully attack a will for personal gain and do not benefit the estate; (4) HRS § 560:3-720 does not apply to personal representatives who unsuccessfully challenge a will and owe nothing to their lawyers under a contingency fee agreement; (5) HRS § 560:3-720 is limited to fees incurred under HRS Chapter 560:3 and does not apply to trust litigation brought under HRS Chapter 560:7; (6) assuming HRS § 560:3-720 authorized the fees requested by Nephi, he did not comply with Hawai'i Probate Rules (HPR) Rule 40-42 or Hawai'i Rules of Professional Conduct (HRPC) Rule 1.5; (7) assuming the fees requested by Nephi were authorized, he failed to provide sufficient evidence of his lawyers' reputations, training, or experience for the Circuit Court to determine their reasonable hourly rate; (8) assuming the fees requested by Nephi were authorized, the Circuit Court lacked sufficient billing information to determine whether the requested fees were reasonable; (9) the fees requested by Nephi were excessive, duplicative, and unreasonable; (10) assuming the costs requested by Nephi were authorized, the request did not comply with HRS § 607-9 or HPR Rule 40-42, or were not sufficiently documented; and (11) the request for costs included costs that were not recoverable.

8

not obligated to pay attorneys' fees because his or her attorneys were retained on a contingency fee basis.

With respect to costs, it appears that unlike attorneys' fees, Nephi was obligated to pay for costs incurred. We hold that under HRS § 560:3-720, Nephi was entitled to an award of his necessary costs. However, we remand the case for further proceedings regarding whether cost items requested by Nephi, and objected to by Beverly, were necessary.

B.

Our resolution of this appeal turns on the interpretation of HRS § 560:3-720. Statutory interpretation is a question of law that is subject to de novo review. Hawaii Gov't Emps. Ass'n, AFSCME Local 152, AFL-CIO v. Lingle, 124 Hawai'i 197, 201-02, 239 P.3d 1, 5-6 (2010). We are guided by the following principles in construing a statute:

> First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning.

Id. at 202, 239 P.3d at 6 (internal block quote format and citation omitted).

C.

Assuming that the good faith requirement of HRS § 560:3-720 has been satisfied, HRS § 560:3-720 requires the estate to pay a person who is a personal representative or is nominated as a personal representative "that person's necessary expenses and disbursements including reasonable attorneys' fees incurred." Based on the language of the statute itself, we

9

construe HRS § 560:3-720 as only requiring the estate to pay attorneys' fees and costs that a personal representative or nominated personal representative is obligated to pay. When a personal representative or nominated personal representative is not obligated to pay attorneys' fees or costs, such fees or costs are not "necessary expenses and disbursements" and are not "fees [or costs] incurred" by the personal representative or nominated personal representative.

Our interpretation of HRS § 560:3-720 is supported by our construction of similar statutory language in Vinson v. Ass'n of Apartment Owners of Sands of Kahana, 130 Hawai'i 540, 312 P.3d 1247 (App. 2013). In Vinson, we construed HRS § 514B-157(b) (2006), which requires the award of "all reasonable and necessary expenses, costs, and attorneys' fees incurred" by a condominium owner who prevails in an action to enforce any provision of HRS Chapter 514B against a condominium association. We held that "in order for Vinson [(the condominium owner)] to have 'incurred' attorneys' fees and costs under HRS § 514B-157(b), he must have paid or be legally obligated to pay such fees and costs[.]" Vinson, 130 Hawai'i at 548-49, 312 P.3d at 1255-56.[5/] We therefore concluded that the trial court erred in awarding Vinson legal fees paid by third-parties that Vinson was not legally obligated to pay. Id. Consistent with Vinson, we conclude that for a personal representative or nominated personal representative to have "incurred" attorneys' fees or costs under HRS § 560:3-720, he or she must be legally obligated to pay such fees or costs.

---

[5/] In Vinson, we noted that "Black's Law Dictionary defines 'incur' to mean 'to suffer or bring on oneself (a liability or expense).'" Vinson, 130 Hawai'i at 548, 312 P.3d at 1255. We also cited case law construing a statute authorizing reasonable attorneys' fees to a prevailing party as not permitting the prevailing party to receive a windfall, but permitting the prevailing party to be awarded attorneys' fees if he could show he was "'legally obligated'" to pay his attorneys, the Legal Aid Society of Hawai'i, the fees he recovered. Id. (citing Wiginton v. Pac. Credit Corp., 2 Haw. App. 435, 446-47, 634 P.2d 111, 120 (1981)).

II.

A.

We first address the Circuit Court's award of attorneys' fees. Beverly asserts, and Nephi does not dispute, that Nephi retained his lawyers on a contingency fee basis. Although the fee agreement between Nephi and his lawyers is not part of the record, generally, a contingent fee agreement is "'a fee agreement under which the attorney will not be paid unless the client is successful.'" Lopez v. State, 133 Hawai'i 311, 327-28, 328 P.3d 320, 336-37 (2014) (Acoba, J., dissenting) (quoting Robert L. Rossi, Attorneys' Fees § 2:1); see also Black's Law Dictionary 362 (9th ed. 2009) (defining "contingent fee" as "[a] fee charged for a lawyer's services only if the lawsuit is successful or is favorably settled out of court"). A contingency fee is usually calculated as a stipulated percentage of the client's recovery in the event of a successful prosecution of the action. Rossi, Attorney's Fees § 2:1; Black's Law Dictionary 362 ("Contingent fees are [usually] calculated as a percentage of the client's net recovery[.]"). Here, Beverly asserts, and Nephi does not dispute, that because Nephi retained his lawyers on a contingency fee basis, Nephi "owed his lawyers nothing" when he did not prevail in his will contest.

Accordingly, for purposes of our analysis on appeal, we assume that Nephi had a standard contingency fee agreement with his lawyers, one that provided that Nephi was not obligated to pay his lawyers any attorneys' fees if Nephi was unsuccessful in his will contest. Based on such a contingency fee agreement, because Nephi did not prevail in his will contest, he was not legally obligated to pay his lawyers any attorneys' fees. Therefore, under HRS § 560:3-720, Nephi was not entitled to have Ethel's estate pay for attorneys' fees that he was not obligated to pay his lawyers.

We conclude that a contrary interpretation of HRS § 560:3-720 would create improper windfall situations at the expense of the estate. HRS § 560:3-720 provides for the personal

11

representative or nominated personal representative, and not his or her lawyers, to receive from the estate the amounts awarded for attorneys' fees and costs. Here, an award to Nephi of $345,736.78 for attorney's fees he is not obligated to pay would result in an improper windfall to him; it would produce the anomalous result of Nephi obtaining a significant portion of Ethel's estate despite the jury's determination that Ethel validly intended that he should receive none of her estate.

Even if Nephi is ordered to pay the fee amount awarded to him to his lawyers, an action HRS § 560:3-720 does not specifically authorize or require, it would result in a windfall to Nephi's lawyers. By taking the case on a contingency fee basis, Nephi's lawyers conditioned their entitlement to receive their fees on their successful prosecution of Nephi's will contest and, in doing so, presumably factored in the possibility and assumed the risk that Nephi would not prevail in setting the level of their contingency fee. Having conditioned their entitlement to fees on Nephi's prevailing in his will contest, Nephi's lawyers would receive a windfall if despite Nephi's failure to prevail, Ethel's estate was nevertheless required to pay Nephi's lawyers for their legal fees.

These windfall scenarios reinforce our view that HRS § 560:3-720 does not require an estate to pay for attorneys' fees a personal representative or nominated personal representative is not obligated to pay because he or she retained lawyers on a contingency fee basis and was not successful in prosecuting or defending a will contest.

B.

We note that HRS § 560:3-720 is a provision that comes from the model Uniform Probate Code that was largely adopted by the Hawai'i Legislature. See Conf. Comm. Rep. No. 77, in 1996 Senate Journal, at 773. We can look to other jurisdictions that have adopted statutes with the same or similar language as HRS § 560:3-720 for guidance. Unfortunately, the case law from other jurisdictions addressing the contingency fee issue presented by

this case is sparse, and the jurisdictions that have addressed this issue are split.

Our interpretation of HRS § 560:3-720 is supported by Russell v. Moeling, 526 S.W.2d 533 (Tex. 1975). Russell involved a contest between a 1965 will and a 1969 will, in which the 1969 will was eventually found to be valid and admitted to probate. Russell, 526 S.W.2d at 534. The unsuccessful executrix of the 1965 will, who had hired her attorneys on a contingency fee basis, applied for attorneys' fees and expenses pursuant to Section 243 of the Texas Probate Code, which contained language that closely matches the operative language of HRS § 560:3-720. Id. at 534-35. Section 243 stated:

> When any person designated as executor in a will, or as administrator with the will annexed, defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will admitted to probate, whether successful or not, he shall be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

Id. at 535 (emphasis added).

The Texas Supreme Court held that because the unsuccessful executrix of the 1965 will, by virtue of her contingency fee agreement, did not owe her attorneys any legal fees, Section 243 did not authorize the recovery of the requested attorneys' fees from the estate. The court reasoned as follows:

> The import of [Section 243] is clear: the executor or administrator "shall be allowed out of the estate his necessary expenses and disbursements." The purpose then is to pay the cost of attorney's fees that are owed by the executor or administrator, and the allowance is not to the attorney, but to the administrator. We are presented here, however, with a situation where the unsuccessful executrix of the 1965 will and her attorneys had entered into a contingent fee agreement which provided that if the probate of the 1965 will was successful, the attorneys were to receive a percentage of all moneys they recovered. The [1965] will was not probated and therefore the executrix named therein was not faced with any expense for the legal work that had been done since nothing was recovered. Consequently, under the terms of Section 243, the estate could not be held liable for those attorneys' fees.

Id. (citations omitted) (emphasis added). In accordance with the Texas Supreme Court, we conclude that the import and purpose of

HRS § 560:3-720 is clear -- to require the estate to pay for attorneys' fees, but only those fees that are actually owed by the personal representative or nominated personal representative. Indeed, this import and purpose of HRS § 560:3-720 is even clearer than the Texas statute, given HRS 560:3-720's reference to "reasonable attorney's fees incurred." (Emphasis added.)

Nephi cites cases from other jurisdictions construing statutes with language close or somewhat similar to HRS § 560:3-720 which have held that unsuccessful will contestants were entitled to recover attorneys' fees even though (or regardless of whether) their attorneys were hired on a contingency fee basis. E.g. In re Estate of Robinson, 690 P.2d 1383, 1389 (Kan. 1984) ("An individual, by entering into a contingent fee contract, does not control the award of attorney fees under the statute[.]"); Fickle v. Scampmorte, 183 N.E.2d 838, 840 (Ind. 1962) ("The statute places the obligation on the estate to pay the attorney fees and expenses that are normally required in a proceeding to probate a purported will if the proceedings are in good faith. This statute is not conditional upon any outside or private agreement."); In re Estate of Whitehead, 287 So.2d 9, 10 (Fla. 1973) ("[T]he attorneys' fees herein ordered paid were payable initially on a contingent basis, but the materialization of the contingency is not a prerequisite to the ordering of payment of attorneys' fees[.]").

We note that there is a dissenting opinion in Robinson, which states that the result of the majority's decision can be to create a windfall, and a dissenting opinion in Fickle, which asserts that because the unsuccessful will contestant was not liable for attorneys' fees under his contingency fee agreement, the attorneys' fees requested were not a necessary expense. Robinson, 690 P.2d at 1390 (McFarland, J., dissenting); Fickle, 183 N.E.2d at 841-42 (Bobbitt, J., dissenting). In any event, we are not persuaded by the majority decisions in the cases cited by Nephi and believe that our interpretation of HRS § 560:3-720

conforms to the statutory language and Hawai'i precedents and reflects a more reasoned approach.

C.

Based on the foregoing, we conclude that HRS § 560:3-720 did not authorize the Circuit Court to order Ethel's estate to pay attorneys' fees that Nephi, by virtue of his contingency fee agreement, did not owe his lawyers and was not legally obligated to pay.[6] We therefore vacate the Amended Judgment to the extent that it entered judgment in favor of Nephi and against Ethel's estate for attorneys' fees.

III.

We now turn to the question of the Circuit Court's award of costs. Nephi was not the prevailing party in the will contest, and therefore, his request for costs was also based on HRS § 560:3-720. As noted, Nephi's fee agreement with his lawyers is not part of the record, but Beverly did not challenge Nephi's request for costs on the ground that he was not legally obligated to pay for costs. In addition, Nephi asserts, without contradiction, that he "had to borrow funds to pay for the costs incurred." Thus, it appears that Nephi satisfied the requirement under HRS § 560:3-720 of having the obligation to pay for the costs for which he sought reimbursement from Ethel's estate.

A.

Beverly, however, contends that Nephi failed to satisfy other conditions which she claims were necessary for Nephi to recover under HRS § 560:3-720. In particular, Beverly contends that Nephi did not act in good faith in pursuing the will contest. She also contends that Nephi was not entitled to recovery under HRS § 560:3-720 because (1) he did not prevail in the will contest and therefore his actions did not benefit Ethel's estate and (2) he was a primary beneficiary of the 1998

---

[6] In light of our analysis and resolution of the contingency fee issue, we need not address the other grounds raised by Beverly in contending that Nephi should not have been awarded attorneys' fees under HRS § 560:3-720.

15

Will that he sought to validate in the will contest. These contentions of Beverly are without merit.

1.

The Circuit Court found that Nephi acted in good faith in pursing the will contest. At the hearing on Nephi's request for attorneys' fees and costs, the Circuit Court stated that "the litigation was neither frivolous nor in bad faith. [Nephi's] motion [for attorneys' fees and costs] is neither frivolous nor in bad faith." Moreover, at a hearing on Beverly's motion to have Nephi pay her attorney's fees and costs on the ground that Nephi's pursuit of the will contest was frivolous, the Circuit Court found that each party was "firm in their belief of the rightness of their respective causes," and it further found that "this litigation was undertaken by both sides in good faith."[1]

"Generally, the existence of good faith . . . is a fact question for the trial court to determine." In re Estate of Herbert, 91 Hawai'i 107, 109, 979 P.2d 1133, 1135 (1999) (internal quotation marks, citation, and brackets omitted). We find no basis to overturn the Circuit Court's determination that Nephi acted in good faith in pursuing the will contest. In this

---

[1] In its order denying Beverly's motion to have Nephi pay Beverly's attorneys' fees and costs, the Circuit Court stated:

> I have presided over pretrial motions as well as the trial of this matter. I have had the opportunity to witness the testimonies and cross examinations of the parties and to evaluate each side's respective claims, as well as each side's reaction to the other side's claims and conduct throughout the course of this period.
>
> With this wealth of background, I conclude that the behavior of each party is one of mutual suspicion and understandable but regrettable hostility. Each side believes that the other has manipulated and/or misrepresented the intent of the decedent for the purpose of achieving financial gain.
>
> Even in this atmosphere of mutual acrimony I find each party to be firm in their belief of the rightness of their respective causes, and each to possess meritorious and indeed likeable character traits.
>
> Taking all these factors into account, I find that this litigation was undertaken by both sides in good faith.

(Emphasis added.)

16

regard, we note that Beverly failed to include the trial transcripts as part of the record on appeal. Without the trial transcripts, Beverly cannot satisfy her "burden of demonstrating error in the record" with respect to the Circuit Court's determination that Nephi acted in good faith. State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000) ("[W]e will not presume error from a silent record."). Moreover, the record that was provided supports the view that Nephi had good faith reasons for challenging the 2000 Will and 2004 Will. The record contains medical records and other evidence that Ethel suffered from dementia and which raised questions about her testamentary capacity. While the jury ultimately found the 2000 Will to be valid, it agreed with Nephi that Ethel lacked the testamentary capacity to execute the 2004 Will.

2.

We reject Beverly's contentions that Nephi was not entitled to recovery of costs under HRS § 560:3-720: (1) because he did not prevail in the will contest and therefore his actions did not benefit Ethel's estate; and (2) because of his status as a primary beneficiary of the 1998 Will.

HRS § 560:3-720 entitles a nominated personal representative who pursues a will contest in good faith to recover his or her necessary costs "whether successful or not" in the will contest. Therefore, the fact that Nephi was unsuccessful in the will contest does not disqualify him from recovering costs under HRS § 560:3-720.

Beverly's claim that Nephi's status as a primary beneficiary of the 1998 Will precludes his recovery of costs is without merit. HRS § 560:3-720 does not limit recovery to personal representatives or nominated personal representatives who are not beneficiaries of the will they sought to prove was valid. We conclude that if a personal representative or nominated personal representative pursues a will contest in good

17

faith, his or her status as a beneficiary of the argued-for will does not render him or her ineligible from recovering under HRS § 560:3-720.

### B.

Beverly challenges the reasonableness and amount of cost items awarded by the Circuit Court. Generally, unless there is a specific objection to a cost item, the court should approve the item. Canalez v. Bob's Appliance Serv. Ctr., Inc., 89 Hawai'i 292, 307, 972 P.2d 295, 310 (1999). However, when objections have been filed to specific costs items requested, the burden of proving the correctness of the items shifts to the party claiming them. Id.

Here, Beverly filed extensive objections to the cost items requested by Nephi. Beverly challenged the costs requested by Nephi on the grounds that they were unnecessary, insufficiently documented, or unrecoverable. The items of cost challenged by Beverly included messenger fees, courier services, Westlaw charges, and other charges related to the filing and delivery of documents that ordinarily do not appear to be recoverable as costs. See Kikuchi v. Brown, 110 Hawai'i 204, 212-13, 130 P.3d 1069, 1077-78 (App. 2006); Bjornen v. State Farm Fire and Cas. Co., 81 Hawai'i 105, 107, 912 P.2d 602, 604 (App. 1996). Nephi did not specifically respond to Beverly's objections or provide documentation supporting items that Beverly asserted lacked sufficient documentation. The Circuit Court granted Nephi's cost request in total, without addressing Beverly's objections or otherwise explaining its decision.

Under these circumstances, we vacate the Circuit Court's cost award and remand for further proceedings. On remand, Nephi may submit additional evidence or justification with respect to the costs objected to by Beverly. We also direct the Circuit Court to explain its rulings on Beverly's cost objections in sufficient detail to permit effective appellate review.

18

CONCLUSION

We vacate the Amended Judgment to the extent that it entered judgment in favor of Nephi for attorneys' fees and costs to be paid by Ethel's estate, and we remand the case for further proceedings consistent with this Opinion.

On the briefs:

Peter Van Name Esser,
Ted H.S. Hong, and
Darwin L.D. Ching
for Respondent-Appellant.

Carroll S. Taylor
(Taylor, Leong & Chee)
and Michael D. Rudy and
Cheryl R. Ng
(MacDonald Rudy Byrns O'Neill
& Yamauchi)
for Petitioner-Appellee.

*Craig H. Nakamura*

*Lawrence M Reifurth*

*Tim M Hinga*